Denio, J.,
 

 delivered the opinion of the court.
 

 Upon the question whether the execution in this case was legally renewed, two years having elapsed from the time of rendering the judgment at the date of the last renewal, I am of opinion with the defendants. The title of the revised statutes relating to courts held by justices of the peace, vests in such courts all the necessary powers which are possessed by courts of record. (2
 
 R.
 
 S. 225, § 1.) This includes the power to issue executions or judgments rendered in those courts. Sections one hundred and forty-four, one hundred and forty-five, one hundred and forty-six, and one hundred and forty-seven of the same title, contain the special provisions deemed essential, relating to the issuing of executions, their renewal and the issuing of further executions, and the language is such as to show that each of these acts is considered as distinct and different from each of the others. An execution may be issued at any time within two years from the time of rendering the judgment. (§ 146.) If an execution be not satisfied, it may be from time to time renewed by an indorsement. (§ 145.) If an execution be returned unsatisfied, in whole or in part, a further execution may be issued. (§ 147.) Although this is not the order in which the sections stand in the statute, it is, I think, the order in which the sense requires them to be read. There is a plain distinction made between the issuing an execution, and the renewal of one, and it is the former only that the limitation of time is applied to. There is no limitation in terms as to the time of renewal. It is to be done from time to time, as the necessity of the case may require. I have no doubt but that the legislature had in view the practice in courts of record, which prohibited the issuing of an execution
 
 *276
 
 after a year and a day from the entering of the judgment, but allowed the issuing of an
 
 alias
 
 or other execution at any time after one had been issued in time and returned unsatisfied. The practice 'grew out of the presumption which was indulged, that the judgment might have been paid or released when it was seen that the creditor had neglected to sue out final process for such a length, of time. That presumption was done away, when an execution was once promptly issued; and after that, delay would not prejudice; as the failure to make the money on the first execution, would account for it. I do not see but that this kind of reasoning is as applicable to justices’ judgments as to judgments of a court of record. At" any rate, I think the legislature has applied it to both cases. The language of the revised statutes, limiting the time for the issuing of executions in courts of record to two years from the entry of the judgment, is similar to that used in regard to justices’ judgments; and the identity of the period within which it may be done in the two cases, furnishes an argument of some weight that the object and motive was the same in both, (2
 
 R. S.
 
 363, § 1.)
 

 We have been referred to an act passed in the year 1840,
 
 {Laws
 
 1840,
 
 ch.
 
 347,) as giving a construction to the provisions in question. By this act a justice whose office has expired is allowed six months within which to issue and
 
 renew
 
 executions, whether hp is re-elected or not; but if he is re-elected, he may issue executions within the time allowed by the revised statutes. An act passed in 1846,
 
 {ch.
 
 276,) allows a justice, whose office has expired, two years after the rendering of any judgment before him, to issue and renew executions on such judgment. I do not see that these statutes assume the construction for which the plaintiff contends. On the contrary, the first act appears to make a distinction between the act of issuing and the renewing of an execution, which «so far favors the construction contended for by the defendants ; and as to the last one, it is sufficient to say, that the legislature might be willing to allow a person who had been a justice, but who was out of office, the right to issue an execution, when they would
 
 *277
 
 not entrust to him the duty of renewing it from time to time. The code of procedure does not provide in terms for a renewal of an execution, but limits the time for issuing one to five years from the entry of the judgment. T do not see that this has any bearing upon the question under consideration. Under it .the issuing and renewal of an execution probably ought to be considered as the same thing, and it would be held that neither could be done after five years. If this were the only point in the case, I should be in favour of sustaining- the judgment of the supreme court.
 

 The conclusion which I have thus arrived at makes it necessary to examine the other question in the case. If the property, for converting rvliich the suit was brought, was legally exempt from execution, the plaintiff was entitled to recover, though it should be admitted that the execution was regular and operative at the time of the seizure. The question as to the constitutional validity of the exemption act of 1842, which was before the late supreme court, in
 
 Quackenbush
 
 v. Danks, (1 Denio, 128,) and which came before this court in the same case upon appeal, (1 Comst. 129,) is consequently again presented; and it is eminently proper that so important a question should be finally determined. Although the judgment of the supreme court denying any effect to the act in respect to contracts made previous to its passage was affirmed by this court, yet, as the judges were equally divided in opinion, the determination cannot be considered as a precedent, but the question must be regarded as entirely open.
 
 (Bridge
 
 v. Johnson, 5
 
 Wend.
 
 342;
 
 Etting
 
 v.
 
 The Bank of the U. S.,
 
 11
 
 Wheat.
 
 59, 78;
 
 The People
 
 v.
 
 The
 
 Mayor,
 
 &c. of N. Y.,
 
 25
 
 Wend.
 
 252.)
 

 The language of the act does not except executions for debts already contracted. It is general, and in terms applies to all future levies and sales on execution, without regard to the time when the debt was contracted or the judgment obtained; and we do not think the case is within the principle of
 
 Dash
 
 v.
 
 Van Kleeck,
 
 (7
 
 John.
 
 477,) and the other cases of that class, in which it has been determined that general language in an act of the
 
 *278
 
 legislature will.not be held retrospective, to so as take away a vested right. The question depends essentially upon the same considerations, which are applicable to the point which we are about to consider, as to the constitutionality of the act; for if the creditor in this case, upon receiving the promissory note of his debtor, acquired a vested right, as an incident to that contract, to have his execution ultimately levied upon all the debt- or’s property not exempt by the laws in existence when the contract was made, the act providing for additional exemptions is clearly unconstitutional; and it will be unnecessary to resort to the somewhat forced construction by which courts have sometimes, in order to prevent injustice, annexed an implied exception to the general language of an act of the legislature.
 

 The contracting of a debt does not in any legal sense create a lien upon the debtor’s property. He is as much at liberty to deal with, and to transfer it
 
 bona fide,
 
 as though he were entirely free from debt'. The right which a creditor, by becoming such, acquires is, to have the use and benefit of the laws for the collection of debts, which may be in force when he shall have occasion to resort to them to enforce his demand against the debtor. The constitution of the United States prohibits the several states from passing a law
 
 “
 
 impairing the obligation of contracts and the precise question in this case is, whether the act of 1842, which exempts from levy and sale on execution, (in addition to former exempt property,) “necessary*household furniture and working tools and team owned by any person being a householder or having á family for which he provides, to the value of not exceeding one hundred and fifty dollars,” impairs the obligation of the contract antecedently made, by which the plaintiff for a valid consideration agreed to pay the defendants a sum of money. The most obvious method by which a contract may be impaired by legislation, would be the alteration of some of its ■ terms or provisions, so that, assuming the validity of the law, the parties would be relieved from something which they had contracted to do, or would
 
 be
 
 obliged to do something which
 
 *279
 
 the contract did not originally require. This is not the case with this law, as applied to the contract in question. The right of the defendants to the money agreed to be paid, and the obligation of the plaintiff to pay it, remains as when the contract was made. But it is admitted that a contract may be virtually impaired by a law which, without acting directly upon its terms, destroys the remedy, or so embarrasses it that the rights of the creditor, under the legal remedies existing when the contract was made, are substantially defeated. With this necessary qualification the jurisdiction of the states over the legal proceedings of their courts is supreme. It may frequently be difficult to draw the line as to acts professedly affecting the remedy only between those which are within the legitimate province of the state legislature, and such as, overstepping those bounds, substantially impair the obligation of antecedent contracts ; and it is, perhaps, impracticable to lay down in language a rule by which all such questions may be tried and determined. Chancellor Kent, when a justice of the supreme court, furnished a definition of the principle as precise, perhaps, as the subject is capable of. After stating that the constitution could not have an eye to the details of legal remedies, he declared that the provisions in question were not violated “ so long as contracts were submitted, without legislative interference, to the
 
 ordinary
 
 and
 
 regular
 
 course of justice, and the existing remedies were preserved
 
 in substance
 
 and with integrity.”
 
 (Holmes
 
 v. Lansing, 3
 
 John. Cas.
 
 75.) Every alteration in the course of legal proceedings affects, to a greater or less extent, the efficacy of the machinery for the collection of debts. The creditor’s action for an existing debt may be rendered more or less speedy, stringent and effective, without raising any question under this provision of the constitution. The very thorough and radical change lately made in our practice by the code of procedure, was applied to existing causes of action where suits were not already commenced; yet it was never regarded as touching the obligation of prior contracts. In conformity with this principle, it has been repeatedly held that the right of im
 
 *280
 
 prisonment for debt is no part of the contract, but only parcel of the remedy, and that it may rightfully be abolished as to existing as well as future contracts absolutely, or conditionally by means of insolvent laws.
 
 (Sturges
 
 v. Crowningshield, 4
 
 Wheat.
 
 122, 200, 201;
 
 Mason
 
 v. Haile, 12
 
 id.
 
 370;
 
 Beers
 
 v.
 
 Haughton,
 
 9
 
 Pet.
 
 328, 359;
 
 Cook
 
 v.
 
 Moffat,
 
 5
 
 Howard,
 
 316; 2
 
 Kent’s Com.
 
 397; 3
 
 Story’s Com.
 
 § 1392, p. 268.) Bor is the law of limitations considered as a part of the contract; and hence the legislature may, consistently with the constitutional provision, enact a statute limiting the time within which actions may be brought to enforce demands where there was before no period of limitation, or may shorten the existing time of limitation ; and such a law may operate upon existing contracts.
 
 (Sturges
 
 v.
 
 Crowningshield, supra ; Hawkins
 
 v.
 
 Barney’s Lessee, 5 Pet.
 
 457 ; 3
 
 Story’s Com.
 
 § 1379,
 
 p.
 
 251;
 
 Smith
 
 v.
 
 Morrison,
 
 22
 
 Pick.
 
 430;
 
 Call
 
 v.
 
 Hagger,
 
 8
 
 Mass.
 
 423.) By the revised statutes of this state, a landlord, whose tenant’s chattels were taken in execution, was entitled to be paid his rent upon making a certain affidavit and giving a certain notice to the sheriff. In 1846 the legislature abolished this right, together with the right to distrain for rent in arrear; and the late supreme court held the enactment constitutional in its application to leases in existence when the act was passed.
 
 (Stocking
 
 v.
 
 Hunt,
 
 3
 
 Denio,
 
 274.)
 

 In Massachusetts, it is known that it has long been the right of a creditor to proceed against his debtor by a preliminary attachment, under which the property of the latter was seized and held to await the obtaining of judgment, when it was subjected to sale for the payment of the debt. In 1838 an insolvent law was passed, containing a provision, giving to the assignees the title to all the insolvent’s property,
 
 including any which might have been attached on mesne process.
 
 This was held to apply to a debt contracted before the passing of the act, and to be a constitutional enactment. It divested the creditor, under certain circumstances, of his remedy by attachment, which existed in full force when the contract was made.
 
 (Bigelow
 
 v.
 
 *281
 
 Pritchard, 21
 
 Pick.
 
 169.) In
 
 Walter
 
 v. Bacon, (8
 
 Mass.
 
 468,) it was decided that an act of the legislature, confirming an unauthorized and illegal enlargement of the limits of a prison yard, which had been ordered by the sessions, was a good defense to an action on a prison bond which had been executed before the statute was passed. These authorities are exemplifications of the principle that legal remedies are in the fullest sense under rightful control of the legislatures of the several states, notwithstanding the provision in the federal constitution securing the inviolability of contracts; and that it is not a valid objection to legislation on that subject, that the substituted remedy is less beneficial to the creditors than the one which obtained at the time the debt was contracted. That this principle is a sound one, I cannot entertain the slightest doubt. Such legislation must of necessity belong' to the states, for it is certain that it is not embraced within any of the grants of power to the general government, and in the nature of things can only be exercised by the state sovereignties. The change effected by the act of 1842 is far less important, in its operation upon existing contracts, than several of those which have thus been held unobjectionable. The right, for instance, to coerce a debtor by imprisoning his person, wmuld be much more efficacious, in a large class of cases, than the power to levy on a team and a small amount of furniture, which he might or might not possess. There is no universal principle of law, that every part of the property of a debtor is liable to be seized for the payment of a judgment against him. The propriety of exempting certain articles of small value, but which were considered important to the comfort of the family of the debtor, was engrafted upon the law of the state before the revision of 1813, and the list of exempt articles has been from time to time increased down to the passage of the act of 1842; but the great mass of individual property has ahvays been, and still is, left liable to the claims of creditors. According to the opinion of the supreme court, each of these acts ought to have been limited to future contracts; and until the prior cases had been disposed of, there must have
 
 *282
 
 been two kinds of executions, one embracing, and the other excepting the exempt property; for however trifling and unimportant it might be, the provision releasing it from the execution is considered, to that extent, a violation of all prior contracts of the debtor. This position, it seems to me, proceeds very much on the idea that the creditor has a specific lien coeval with the contract upon all the chattels of his debtor, which, as already remarked, is quite erroneous. When it is remembered that his right, so far as it is protected by .the constitution of the United States, is limited to the benefit of the general laws of the state provided for the collection of debts, and to the continuance' of such laws, in subtance and with good faith, it seems clear, that any change which the policy or humanity of the legislature may make, ■which shall leave a substantial remedy, does not touch the obligation of prior contracts within the meaning of the constitution. The regulation prescribed by the act of 1842 is a general one. It professes to give the rule, according to which, during all future time, the rights of creditors arc to be enforced; and it is not made to embrace past transactions because there existed any motive for relieving existing debtors, but in' order that the course of legal procedure should be uniform. Men will, judge differently as to the policy of these exemption acts, but their cbnformity with the constitution cannot depend upon the ideas which courts may entertain as to their wisdom and political expediency. The question is, whether the law which prevailed when the contract was made,'has been so far changed that there does not remain a substantial and reasonable mode of enforcing it in the ordinary and regular course of justice. Taking the mass of contracts, and the situation and circumstances of debtors, as they are ordinarily found to exist, no one would probably say that exempting the team and household furniture of a householder, to the amount of one hundred and fifty dollars, from levy on execution, would sensibly affect the efficiency of remedies for the collection of debts, though a case might possibly happen where the exempt property Avould constitute all that the debtor possessed. When the remedy of
 
 *283
 
 imprisonment was taken away, its effect upon existing engagements was tenfold more important; yet this was held not to be objectionable because of the right which the state legislatures must always possess, to modify and regulate the methods of legal procedure. I regard the act of 1842 as a provision clearly within the competency of the legislature, and one which they might ' lawfully apply to all future proceedings in courts, whether such proceedings should relate to existing or future causes of action.
 

 A.
 
 good deal of reliance is placed in the judgment I have, been examining, upon two cases in the supreme court of the United
 
 States—Bronson
 
 v.
 
 Kinzie,
 
 (1
 
 Howard's Rep.
 
 411,) and
 
 McCracken
 
 v. Hayward, (2
 
 id.
 
 608.) In these cases a statute of the state of Illinois was declared to be a violation of the constitutional provision under consideration; and if the case now before the court came fairly within the principle of these adjudications, it would form a precedent which we could not, and which for myself I should not desive to, disregard. But I do not think there is any considerable similarity in the cases. The statute of Illinois did not profess to be a part of the ordinary and regular system for the collection of debts, but was special and exceptional in its character, and was evidently passed to meet a particular emergency, namely, to afford relief against a mass of indebtedness which the peculiar circumstances of some preceding years had led the citizens to contract. This is obvious from the fact that its operation is limited to existing contracts and to such as might be entered into prior to the first day of May then next, which was about two months after the passing of the act. It cannot be pronounced that the legislature of Illinois considered the provisions of this act as affording an adequate and sufficient or reasonable remedy for the collection of debts in ordinary cases; but the contrary is to be inferred from their declining to apply them generally to all future cases. Again; the act forbade the sale of the debtor’s property, altogether, unless there should be offered for it, an amount equal to two-thirds of a valuation to be put upon it by three persons, one of whom was to be selected by the debtor. This was interpolating a new
 
 *284
 
 feature into the law and practice of judicial sales, and one which would-be quite likely in many, if not in most cases, to render the remedy entirely nugatory, I should have found no difficulty in saying that no reasonably substantial remedy was left to the creditor under this actbut it would have been sufficient, in determining against the constitutionality of the law, to refer to the fact that all existing contracts, and such as should immediately be- made, were by it taken out of the ordinary and regular sys-' tern of legal remedies and subjected to new and exceptional rules, of an anomalous character,, which were calculated to embarrass, and which, might in many cases wholly defeat^ the creditor’s remedy. The Illinois act subjected sales pursuant to a judgment of foreclosure of a mortgage to the same provisions, and thus directly violated one of the specific terms of that class of securities; and the first case referred to was a review of a judgment where the statute had been applied to a foreclosure case. In the other case the judgment was the ordinary one
 
 in personam,
 
 and in both cases the statute was, in my opinion, rightfully held to impair the obligation of the contract. I do not understand either of the cases to determine that the law, respecting legal procedure in existence when the contract was made, cannot be changed in such manner as to operate upon existing contracts. In the able and discriminating opinion of Chief Justice Taney, in the first case, the right to make such
 
 changes
 
 is distinctly asserted; and if the opinion in
 
 McCracken
 
 v.
 
 Hayward
 
 holds the contrary, it was unnecessary to go that length, and the doctrine would be hostile to the principle of several prior cases, and an unwarrantable restriction upon the powers of the state governments. It is evident that the court did not intend to embrace a case like the one under review. The chief justice expressly declares, in giving the opinion of the court in
 
 Bronson
 
 v.
 
 Kinzie,
 
 that a state legislature may, “if it thinks proper, direct that the necessary implements of agriculture, or the tools of a mechanic, or articles of necessity in household "furniture, shall, like wearing apparel, not be liable to execution on judgments and in a subsequent case of
 
 The Planters' Bank
 
 v.
 
 *285
 

 Sharp,
 
 (6
 
 Howard,
 
 301, 330,) decided as late as 1848, Mr. Justice Woodbury, in giving the opinion of the court, enumerated laws exempting tools or household goods from seizure, among the examples of legislation respecting the remedy which might be constitutionally applied to existing contracts; and in
 
 Bigelow
 
 v.
 
 Pritchard,
 
 before referred to, Putnam, J., in delivering the opinion of the supreme judicial court of Massachusetts, said that the legislature might lawfully diminish the creditor’s remedy to enforce payment, by exempting a part of the property of the debtor from attachment on mesne process or levy on execution; “ for example, articles of furniture, beds and bedding, &c. necessary for a debtor and his family.”
 

 Upon the whole, I am of opinion that the statute of 1842 relates exclusively to the remedy, and does not touch the obligation of the contract within the meaning of that expression in the constitution of the United States ; and moreover, that it cannot be classed among those legislative provisions which, professing to operate upon the remedy only, do nevertheless materially impair the obligation of the contract itself. I am therefore in favor of reversing the judgment of the supreme court on that ground, and of ordering a new trial to be had in that court.
 

 Ruggles, J., was not present at the argument, and took no part in the decision of the case.
 

 Judgment reversed.