O’Brien, J.
 

 This appeal involves two important questions: (1) The rule of damages applicable generally to such cases, and (2) the right of the plaintiffs to recover anything for the period prior to March 3, 1885. The plaintiffs are, and for more than twenty years have been, the owners of about forty acres of land on the east bank of the Hudson river at Fishkill, bounded on the west by the river, and covering about 1,000 feet of the river front. It also appears that on the 3rd of March, 1885, the state, pursuant to a resolution of the commissioners of the land office, granted to the plaintiffs the lands under water, adjacent to and in front of the uplands, from high water mark westerly to the channel bank of the river, excepting therefrom the rights of the New York Central & Hudson River Railroad Company. This railroad, it seenis, was constructed across the water front prior to or about the year 1854, and since that time, the plaintiffs and their grantors have used a strip of land, leading from the uplands through a culvert under the Hudson- River Railroad, to the chan,
 
 *249
 
 nel of the river, for loading vessels with brick, made
 
 on
 
 the premises, and for all purposes connected with the manufacture of brick on the premises, with the consent of the Hudson Biver Bailroad, until such use was obstructed by' the building of the defendant's road bed. This was built in the years 1880 and 1881, outside of .and nearly parallel with the road bed of the Hudson river road, in front of the culvert above described, and along the whole river front of plaintiffs’ land, without any right or authority from the plaintiffs or their grantors. The effect of this was to cut off the plaintiffs from'access to the river from their lands. The plaintiffs’ title to the uplands and the land under water, where the defendant’s road is built, has been determined in their favor by the decisions of this court.
 
 Rumsey et al.
 
 v.
 
 The N. Y. & N. E. Railroad Co.,
 
 114 N. Y., 423; 23 St. Rep., 928; 125 N. Y., 681; 34 St. Rep., 454.
 

 The principles applicable to actions of an equitable character to restrain the operation or maintenance of such structures, when the facts amount to a continuing trespass against the rights of adjacent property owners, are not involved, as the plaintiffs have not adopted that form of obtaining relief.
 
 Galway
 
 v.
 
 Met. E. R. Co.,
 
 128 N. Y., 132; 40 St. Rep., 145;
 
 Uline
 
 v.
 
 N. Y. C. & H. R. R. R. Co.,
 
 101 N. Y., 98. In this action the plaintiffs seek to recover damages to their uplands, sustained by the act of the defendant, in constructing its road bed across the plaintiffs’ water front, and thereby cutting off their access to the river, and such damages are claimed from the time of the construction of the railroad to the commencement of the action. The court assessed the damages at $10,500. This result was reached upon the theory that the use of the plaintiffs’ premises, for the purpose of a brick yard, had been depreciated to that extent in consequence of the construction of the defendant’s road. At the same time the court found that the culvert, as a passageway, was discontinued about the year 1875, and the dock, at the westerly end of the culvert, was allowed to go to decay as was also the causeway which connected the dock with the brick yard. That the plaintiffs’ lands had no buildings ■or machinery on them to fit them for use for brick making purposes .and that they had been in this situation since the year 1875, and that the defendant had in no wise injured the plaintiffs’ lands, except only to prevent or delay the sale of the clay thereon for brick making purposes. It appears, therefore, from these findings, that the use of the premises for brick making or as a brick yard had been discontinued six years before the defendant’s road was built. The plaintiffs asked to recover in this action only such damages as they have sustained, up to the commencement of the action, by reason of the acts complained of. As a basis for the estimate, the land must be taken as it was used during the time ■embraced in the action. It does not appear that the use of the premises as a brick yard was. discontinued in consequence of the acts of the defendant, and that fact could not well be established, for it ceased to be used for such purpose long before the defendant’s road was built.
 

 
 *250
 
 The proper measure of damages in such a case is the diminished rental or usable value of the property as it was, in consequence of the loss, by defendant’s acts, of access to the river in the manner enjoyed by the owner prior to the construction of the embankment across the water front by the defendant. The plaintiffs cannot be permitted to prove, or allowed to recover, damages that they might have sustained if they had put the property to some other use or placed other structures upon it.
 
 Tallman
 
 v.
 
 The Met. Elevated Railroad Co.,
 
 121 N. Y., 119; 30 St. Rep., 491.
 

 The .damages could not be based upon the rental or usable value of the property for a brick yard any more than they could be based upon their use for some other specific or particular purpose to which they were not in fact put by the owners. The question is what damages did the plaintiffs in fact suffer by having the access to the river cut off, not what they might have, suffered had the land been devoted to some particular use to which it was not put.
 

 The proof of damages, on the part of the plaintiffs, consisted entirely of the opinions of witnesses'as to the rental value of the land in the absence of the structure built by defendant. This proof was competent as far as it went, but it did not establish .the legal measure of damages. It should also have been shown what was the rental or usable value of the premises as they were with the obstruction which interfered with the access to the river, as the difference in these two sums represented the actual loss caused by the defendant’s acts. The defendant offered to prove the additional cost of shipping brick to market upon the river rendered necessary by the construction of^the embankment. This testimony was objected to by the plaintiff and excluded by the court, to which the defendant excepted. This ruling was erroneous. The additional expense, caused by defendant’s structure in the river, of transporting brick or any other product of the land to market was an important element of the damage sustained and the defendant should have been permitted to prove the facts in that regard,, at least by way of answers to plaintiffs’ theory of damages. The method adopted of establishing the plaintiffs’ damages, therefore, demands a reversal of the judgment.
 

 The plaintiffs were permitted to recover for more than four years prior to their grant of the land under water, on the 3d of March, 1885. During this period the plaintiffs’ rights-were those-of ordinary riparian owners on the banks of navigable rivers. They owned the uplands, bounded by the river, and as such owners had the right, under the statute, to apply to the commissioners of the land office for a grant of the land under water in front .of their premises. In this respect and on this branch of the case, the facts are identical with those in the case of
 
 Gould
 
 v.
 
 The Hudson River Railroad Co.,
 
 6 N. Y., 522. If that case is to be followed.the plaintiff cannot recover any damages prior to March 3, 1885. # -
 

 # It was there held that the owner of lands on the Hudson river has no private right or property in the waters or the shore between; high and low water mark, and, therefore,, is not entitled to com
 
 *251
 
 pensation from a railroad company, which, in pursuance of a grant from the legislature, constructs a railroad along the shore, between high and low water mark, so as to cut off all communications between the land and the river, otherwise than across the railroad. It is believed that this proposition is not supported by any other judicial decision in the state and if we were dealing with the question now as an original one it would not be difficult to show that the judgment in that case was a departure from precedent and contrary to reason and justice. It is no doubt true that even a single adjudication of this court, upon a question properly before it, is not to be questioned or disregarded except for the most cogent reasons, and then only in a case where it is plain that the judgment was the result of a mistaken view of the condition of the law applicable to the question. But the doctrine of
 
 stare de
 
 cisis', like almost every other legal rule, is not without its exceptions. It does not apply to a case where it can be shown that the law has been misunderstood or misapplied, or where the former determination is evidently contrary to reason. The authorities are abundant to show that in such cases it is the duty of courts to re-examine the question. Chancellor Kent, commenting upon the rule of
 
 stare
 
 decisis, said that more than a thousand cases could then be pointed out, in the English and American reports, which had been overruled, doubted or limited in their application.
 

 He added that “ It is probable that the records of many of the courts of this country are replete with hasty and crude decisions, and in such cases ought to be examined without fear and revised without reluctance, rather than to have the character of our law impaired and the beauty and harmony of the system destroyed by the perpetuity of error." 1 Kent’s Com. (13th ed.), 477; Broom’s Legal Maxims, 153;
 
 Gifford
 
 v. Livingston, 2 Denio, 392;
 
 Morse
 
 v. Goold, 11 N. Y., 281;
 
 Judson
 
 v.
 
 Gray,
 
 id., 408.
 

 The
 
 Gould
 
 case hás been frequently criticized and questioned, and it is believed has never been fully acquiesced in by the courts -or the profession as a decisive authority or a correct exposition of the law respecting the rights of riparian owners.
 
 Kane
 
 v.
 
 N.
 
 Y.
 
 . R. R.
 
 Co., 125 N. Y., 184; 34 St. Rep., 876. The learned judge, who gave the prevailing opinion in the case, assumed as the foundation of his argument that the question was conclusively determined by the supreme court adverse to the plaintiff in
 
 Lansing
 
 v. Smith, 8 Cowen, 146, subsequently affirmed in the court of errors. 4 Wend., 9. That case grew out of the construction of the canal basin at Albany, a public improvement to promote commerce and navigation, and the question was whether, as against such an improvement, the plaintiff’s right to the use of his dock and water front, as he had enjoyed it before, was exclusive. It may be conceded that the sovereign power in a work for the improvement of the navigation of a public river may incidentally interfere with the enjoyment and use of the water front by riparian owners, bjit the power to grant to a private individual or corporation the right to cut such owner off entirely from communication with the stream without compensation is quite another and different question. There is really no authority
 
 *252
 
 in
 
 Lansing
 
 v.
 
 Smith
 
 for the support of such a proposition. On the contrary, as was pointed out by Judge Andrews in the
 
 Kane
 
 case,
 
 supra,
 
 that question was excluded from the discussion, as the chancellor who delivered the opinion was careful to say, “ whether the legislature could grant the right to any other person to build a wharf in front of the plaintiff so as to destroy his-entirely, is a question which it is not necessary now to discuss.,r It is not necessary to refer at much length to the numerous cases and the abundant learning to be found in the books respecting the rights of riparian owners. The authorities on the general subject are not all in harmony, and we are now concerned with but a single branch of an important and somewhat complicated subject, namely, the right of such owner, as against some other-private interest, to have access to and enjoy the use of the highway.
 

 It may be observed, however, that since the decision of the
 
 Gould
 
 case in 1852 this question, and questions of a kindred nature, have been elaborately examined, discussed and" settled in this court, in our highest federal tribunal, in the court of last, resort in England, and in the highest court of several of our sister states. The doctrine of that case has been repudiated or ignored in these decisions, and the rights of proprietors of lands upon rivers and public highways determined upon principles more in accord with reason and justice. The long line of decisions in this court from the
 
 Story
 
 case, 90 N. Y., 122, to the'
 
 Kane
 
 case, 125 id, 164; 34 St. Rep., 876, hold that an owner of land abutting upon a public street has a property right in such street for the-purposes of access, light and air, and that the state has no power to grant to a railroad the right to occupy the street, when such occupation injuriously affects the enjoyment by the property owner of such rights, except by the exercise of the power of eminent domain, and when a street is thus used by the railroad, without condemnation proceedings or a grant from the property owner, it is responsible to him for any damages resulting- therefrom. Unless there is some distinction to be made between the-rights which pertain to an owner of land upon a public river and. one upon a public street, which is not perceived, then the principles sanctioned by this court, in these cases, virtually overrule-the
 
 Gould
 
 case as they are apparently irreconcilable.
 

 The question respecting the rights of riparian owners in such a case was determined in the supreme court of the United States in
 
 Yates
 
 v.
 
 Milwaukee,
 
 77 U. S., 497. Mr. Justice Miller in delivering the opinion of the court stated the law clearly as determined by that court “But whether the title of the owner of such a lot. extends beyond the dry land or not, he is certainly entitled to all the rights of a riparian proprietor whose land is bounded by a. navigable stream; and among these rights are access to the navigable part of the river from the- front of his lot, the right to make-a landing, wharf or pier for .his own use, or for the use of the-public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights-of the public, whatever these may be. * *
 
 *
 
 This riparian
 
 *253
 
 right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired. It is
 
 a
 
 right o£ which, when once vested, the owner can only be deprived in accordance with established law, and If necessary that it be taken, for the public good, upon due compensation.”
 
 St. Louis
 
 v.
 
 Rutz,
 
 138 U. S., 246.
 

 In England it was held quite recently that the owner of an estate on the tide waters of the Thames was entitled to compensation, not only for the land actually taken, under the authority o£ a statute, for the construction of a public road along the shore, which cut off the owner’s access to the river, but also for the permanent damage to the whole estate in consequence of its change by the improvement from river side to road side property, including. his individual and particular right to use the shore of the. river.
 
 Buccleuch
 
 v.
 
 The Metropolitan Board of Works,
 
 L. R., 5 E. & I. A., 418. In nearly all of our sister states where the question has arisen the same or substantially similar rules have been adopted.
 
 Ashby v.Eastern R. R. Co.,
 
 5 Met., 368;
 
 Steam Engine Co.
 
 v.
 
 Steamship Co.,
 
 12 R. I., 357;
 
 Chapman
 
 v.
 
 O. & M. R. R. R. Co.,
 
 33 Wis., 629;
 
 Delaplaine
 
 v.
 
 C. & N. W. R. R. Co.,
 
 42 id., 214;
 
 Holton
 
 v.
 
 Milwaukee,
 
 31 id., 38;
 
 Brisbine
 
 v.
 
 St. Paul R. R. Co.,
 
 23 Minn., 114.
 

 The case of
 
 Stevens
 
 v.
 
 The Paterson & Newark R. R. Co.,
 
 34 N. J. L., 532, in which a contrary rule was adopted, was decided largely upon the authority of the
 
 Gould
 
 case and that of
 
 Buccleuch
 
 v.
 
 The Metropolitan Board of Works,
 
 L. R., 5 Exch., 221, which, as we have seen, was subsequently reversed in the House-of Lords.. Gould on Waters, § 151.- It must now, we think, be regarded as the law in this state that an owner of land on a public river is entitled to such damages as he may have sustained as-against a railroad company that constructs its road across his water front and deprives him of access to the navigable part of the stream,, unless the owner has granted the right, or it has been obtained by the power of eminent domain. This principle cannot, of course,, be extended so as to interfere with the right-of the state tó improve the navigation of the river or with the power of congress-to regulate commerce under the provisions of the Federal constitution. The plaintiffs were, therefore, entitled to recover such damages as they could prove to have been sustained by them, prior to March 3, 1885, but on account of the erroneous rules adopted for determining the damages, above pointed out, the judgment must be reversed and a new trial granted, costs to abide the-event
 

 All concur.