(48 Misc. Rep. 468)

### SILBERMAN v. MAYER et al.

(Supreme Court, Special Term, Queens County. November, 1905.)

1. COVENANTS—USE OF LAND—CONSTRUCTION—ENFORCEMENT.

While it is true that a restrictive covenant as to the use of land should be construed strictly, nevertheless, in determining what the intent of the parties to the contract was when the same was entered into, it should be construed as any other contract, and, when that intent has been determined, the rights of the parties should be neither extended on the one hand nor limited on the other, but strictly enforced.

2. SAME—LAND AFFECTED—LAND BELOW SHORE LINE.

Certain tenants in common partitioned the premises which fronted on the ocean by a deed agreeing that neither the parties nor their heirs nor assigns should at any time thereafter erect upon any part of the premises any house or place for the sale of intoxicating liquor. Held, that not only the land owned by the parties, but such riparian rights as they enjoyed in the submerged land beyond highwater mark, was affected by the covenant, so that a grantee of one of the parties had no right to maintain a structure placed upon piles in the water and used as a vaudeville theater where intoxicating liquor was sold.

Action by Samuel J. Silberman against David Mayer and others. Judgment for plaintiff.

Lenehan & Dowley (John J. Lenehan, of counsel), for plaintiff.

House, Grossman & Vorhaus (Charles Goldzier, of counsel), for defendants.

BURR, J.  The plaintiff is the owner of a plot of land on the westerly side of Vernam avenue in that portion of the city of New York formerly known as Arverne-by-the-Sea, on which he has erected a dwelling house which he has used and occupied during the summer season as a place of residence.  The defendant Marco Pack is the owner of a piece of land situated on the opposite side of Vernam avenue, the southerly boundary line of which is the Atlantic Ocean.  Both pieces are south of the strip of land formerly occupied by the tracks of the South Side Railroad of Long Island, and were included in a tract of land formerly owned by Joseph Cornwell, Annie C. Summerfield, and John Leeper, the southerly boundary line of which tract was also the Atlantic Ocean.  In June, 1885, the above-mentioned tenants in common, by mutual deeds, partitioned the property among themselves, and mutually covenanted and agreed that neither the parties of the second part to the said deeds, nor their heirs or assigns, should—

"At any time hereafter erect, maintain or permit any mechanical or mercantile business, or any stable, or any building other than a dwelling house on the portion of the premises lying south of the strip thereof now occupied by the tracks of the South Side Railroad of Long Island, nor erect, maintain or permit upon any part of said premises any house or place for the sale of wine, beer or intoxicating liquors, except by apothecaries for medicinal purposes, * * * and that this covenant shall run with the land and bind all future owners thereof."

Prior to the commencement of this action, the predecessor in title of the defendant Pack erected, below high-water mark of the Atlantic Ocean, but immediately in front of the upland above referred to and owned by him, a structure upon piles, about 100 feet wide and 150 feet long, and placed thereon a frame building containing a stage and gallery, which was used and occupied as a vaudeville theater, and as a place for the sale of wine, beer, and intoxicating liquors.  The defendants are now seeking to use the said building for that purpose; and this action is brought to restrain the said Pack and the other defendants claiming under him from such use, as being in violation of the covenant above referred to.  If such covenant is still in force, and is applicable to that portion of the premises occupied by the said defendants upon which such structure is erected, it is conceded that such use is a violation of said covenant.  But the defendants claim that, inasmuch as the structure is wholly below high-water mark, it is not subject to the provisions of the said covenant.

The plaintiff, while conceding that the location of the building is below high-water mark, claims that the structure may be treated as an accretion to the upland; and that, for that reason, it comes within the provisions of the said covenant.  Levy v. Halcyon Casino Hotel Co., 45 Misc. Rep. 289, 92 N. Y. Supp. 231.  I do not think that this position can be maintained.  The doctrine of accretion generally rests

96 N.Y.S.—59

upon increase by imperceptible degrees through natural causes, such as the ordinary action of the water. It does not apply to land unclaimed by man through filling in land once under water and making it dry. Mulry v. Norton, 100 N. Y. 424, 3 N. E. 581, 53 Am. Rep. 206. An exception to this doctrine arises where the increase is due to the action of some one in violation of the right of the owner of the upland. In that case, the owner of the upland, as between him and the wrongdoer, may be deemed to gain title by accretion to the extent of the structure built by such wrongdoer. Steers v. City of Brooklyn, 101 N. Y. 51, 4 N. E. 7; Sage v. Mayor, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592.

But, although the plaintiff cannot claim that this structure is in the nature of an accretion to the adjoining upland, I am still of the opinion that it is clearly within the provisions of the restrictive covenant above referred to. While it is true that a restrictive covenant as to the use of land should be construed strictly, this is so in the same sense in which a covenant of suretyship should be strictly construed. In determining what the intent of the parties to the contract was when the same was entered into, it should be construed as any other contract. When the intent of the parties has been determined, then the rights of the parties as so fixed and determined should be neither extended, on the one hand, nor limited, on the other, but strictly enforced. Sonn v. Heilberg, 38 App. Div. 515, 56 N. Y. Supp. 341. It was clearly the intent of the parties to the original covenant to provide that, as between themselves and their subsequent grantees, the entire premises between the South Side Railroad on the north and the ocean on the south, which were included within the descriptions in the partition deeds, should be used and occupied for residential purposes, and should be free from the annoyances consequent upon the use of any portion thereof for purposes of trade, or for the sale of intoxicating liquors, or for the conduct of any mechanical or mercantile business.

The southerly boundary of the premises in question was described in the partition deeds as "the Atlantic Ocean," and such conveyance would only vest in the grantees named therein an absolute title to high-water mark. Langdon v. Mayor, 93 N. Y. 144; Mayor v. Hart, 95 N. Y. 443; De Lancey v. Piepgras, 138 N. Y. 36, 33 N. E. 822; Sage v. Mayor, 154 N. Y. 61, 47 N. E. 1096, 38 L. R. A. 606, 61 Am. St. Rep. 592. But, although the absolute ownership of the grantees in the said deeds was terminated by the high-water mark of the Atlantic Ocean on the south, the owners of that portion of the property immediately adjoining such high-water mark had, in addition thereto, certain rights and privileges in the land under water, below high-water mark, which were in the nature of property rights, and belonged to them as such riparian owners. While the absolute title of a riparian owner does not extend beyond the dry land, he is entitled, as against all but the people of the state, to certain valuable rights and privileges in the land under water, including the right of access to the navigable part of the river, and the right to erect piers thereon, even though no grant of land under water has been obtained from the state. As to such structure, as against everybody but the state, such riparian owner would have good title. City of Brooklyn v. Mackay, 13 App. Div. 105, 42 N. Y. Supp. 1063;

Rumsey v. New York & New England R. Co., 133 N. Y. 79, 30 N. E. 654, 15 L. R. A. 618, 28 Am. St. Rep. 600; Thousand Island Steamboat Co. v. Visger, 179 N. Y. 210, 71 N. E. 764. These rights are property rights and are to be protected as such. Sage v. Mayor, supra.

I think, therefore, that the word "premises" in the covenant in question, should be construed as including, not only the land actually described in the deeds, but all rights in property of the nature of land which belonged to the grantees named therein by virtue of their title to the upland. It was through the deed containing these covenants that the defendants in this action acquired the right which they have exercised to erect the structure in question below high-water mark; in which right they are protected as against everybody except the state, or the organized public as represented by the state. Sage v. Mayor, supra. It would be too narrow a construction of the word "premises," to hold that it included only the dry land included within the terms of the description and not the valuable property rights to land below high-water mark, which followed as an incident thereto. A pier erected by the owner of the upland, upon land under water belonging to the state, has been held to be real estate as between the widow of such owner and his heirs at law, and certain grantees by virtue of a deed in which his wife did not join; and his widow has been held entitled to dower therein. Bedlow v. Stillwell, 158 N. Y. 292, 53 N. E. 26. Premises may therefore be deemed to include everything in the nature of land conveyed by the deeds in question.

It would entirely defeat the purpose of the original covenantors, if it were possible for the grantees of the persons named in the said deeds, by erecting buildings and structures of various kinds below the high-water mark, to entirely change and destroy the character of the restricted territory and deprive the persons resident therein of the advantages sought to be conferred upon them by such covenants. Covenants controlling the enjoyment of land, even though they may not be binding at law, will be enforced in equity. A person who has sold a plot of ground with a covenant not to erect a tenement house in the immediate neighborhood will be enjoined, in equity, from purchasing a lot from another owner and erecting such a building thereon. Lewis v. Gollner, 129 N. Y. 227, 29 N. E. 81, 26 Am. St. Rep. 516. A person who has covenanted not to erect upon his own land any structure which should impair the ocean view of his adjoining neighbor will not be permitted to erect such a structure upon land subsequently acquired by him, immediately adjoining that described in the original agreement; since the purpose and intent of the agreement would in that way be defeated. Gawtry v. Leland, 31 N. J. Eq. 385.

The case of Buck v. Adams, 45 N. J. Eq. 552, 17 Atl. 961, seems peculiarly in point. In that case the defendants had covenanted not to erect any building within 30 feet of the east line of Virginia avenue in Atlantic City. Subsequently they attempted to erect buildings which would be within 30 feet of the line of the said avenue, if it were extended below high-water mark. In the action brought to restrain such construction, the defendants claimed that, as the state of New Jersey did not own beyond high-water mark, Virginia avenue must necessarily terminate at high-water mark, and that the place where the structure

was being erected was not within the territory affected by the covenant. In that case the court say:

"The inference or legal deduction which counsel seeks to establish from this statement is that the covenant and the benefits thereof are limited to the line of said avenue as adopted or established by the public authorities. If this be so, it follows as a necessary consequence that all the advantages sought to be derived on the part of the grantees may be entirely destroyed by the grantor, should he choose to make any sort of an erection * * * upon his land which might extend further seaward than the east line of said avenue. To adopt such a construction of covenants of this character would seem to me not only to be a perversion of all general rules, but destructive ·of the very spirit which controls courts when the meaning or intention of the parties is so clear as in this case. * * * But counsel for defendant seems quite confident that this equitable principle and every other of a similar nature is overcome by the fact * * * that the title to the lands whereon he is making the said additions and erecting the said buildings is in the state, or, at all events, not in him. I am unable to see any force in this contention. If the defendants would have no right to create such obstructions upon their own land in order to destroy the beneficial enjoyment of their covenants, I cannot see how their rights would be enlarged so as to enable them to accomplish the same purpose by also committing an act of trespass in entering upon the lands of others."

I think, therefore, that the structure complained of by the plaintiff was erected and is being maintained in violation of the terms of the restrictive covenant above referred to, and that its erection and maintenance should be enjoined, unless some other defense to the plaintiff's claim is established.

The defendant has claimed that such a change of surroundings has taken place in the restricted territory as will make the enforcement of the covenant in suit valueless and inequitable. I think the evidence wholly fails to establish this; and, in a recent case in the same locality and growing out of the same covenant, this court has declined to so find, and hold. Levy v. Halcyon Casino Hotel Co., 45 Misc. Rep. 289, 92 N. Y. Supp. 231.

The defendant also claims that the action must fail because the people of the state of New York were not made a party defendant thereto. This contention seems to me absolutely without force. Conceding that the title to the land where this structure is erected is in the people of the state of New York, they have not participated in the erection or maintenance of the building complained of. They have committed no wrong as against this plaintiff. Whether the rights of the people are subject to the provisions of the covenant in question is a matter of no consequence at the present time. The rights of the defendants in this action are certainly so subject. If the people of the state have any superior rights, such rights will not be concluded by the judgment that shall be entered herein. There must be judgment for the plaintiff against the defendants, enjoining and restraining them from continuing the use and maintenance of the building and structure described in the complaint for carrying on any mercantile business, or for a house or place for the sale of wine, beer, or intoxicating liquors, or for any other purpose than a dwelling house. The plaintiff should recover his costs of this action.

Judgment for plaintiff, with costs.