Fuchsberg, J.
(dissenting). As the companion dissent accu *731 rately indicates, there is substantial evidence to support the Human Rights Division’s determination; indeed, the evidence to do so is aplenty. But that was also true of the evidence in Matter of State Div. of Human Rights v Averill Park Cent. School Dist. (see my dissent at 46 NY2d 950, 951). Nevertheless, there the majority chose, as in the present case it now chooses again, to hold as a matter of law that subdivision 21 of section 292 of the Human Rights Law, in the unamended form in which it existed when each of these cases arose, permits support of an employer’s discharge of an employee simply because the latter suffers from a handicap that in theory might affect his ability to perform his job, even when in actuality it does not do so.
Therefore, if the two cases are to be distinguished so as to bring a more favorable result in the present one, it will take something more than the fact that the employee in Averill was a school bus driver while here he is a maintenance man. Or that proof of the capacity of one of them to perform his job was more overwhelming than that of the other. Nor, in this light, may the makeweight allusion to public safety in the Appellate Division’s Averill decision (59 AD2d 449, 452), on which our court affirmed, serve that purpose.
However, the Averill case need not be determinative of the one before us now, since legislative developments that followed in effect call upon the court to look at the statute anew. For, apparently surprised, and dismayed, by the Averill decision, the Legislature acted with despatch to clarify the language of the Human Rights Law so as to remove any possibility that its intent could be misconstrued. In doing so, it left no doubt that the court’s interpretation had been in conflict with the original intendment of the drafters of the statute (L 1979, ch 594; see Averill, 46 NY2d 950, 955-956, supra). As the transcript of the recent Assembly colloquy on the bill reveals, the statute was always calculated to provide that the question of whether a disability is "related” to a job (or, in the even more explicit language in which the original sponsors of the legislation have now taken the pains to cast their unaltered intent, whether a disability actually "prevent[s] the complainant from performing in a reasonable manner”) is not to be viewed abstractly by a court as a matter of law. Rather, it is to be decided in accordance with substantial evidence standards by the Human Rights Division, the agency deemed most qualified to root out discrimination (see, e.g., Assembly Debate *732 on A8151, MOL No. 873 [May 30, 1979]). All this indicates too that there is no issue of retroactivity since, no matter how denominated, the revision was not, because it did not need to be, substantive in order to achieve the expressed limited purpose of the revisers. Consequently, it hardly behooves us to ignore the sharpened perception of the statute’s true meaning.
And, lest there be any misapprehension, stare decisis does not stand in the way of correction "where it can be shown that the law has been misunderstood or misapplied” (Rumsey v New York & New England R. R. Co., 133 NY 79, 85, cited in Matter of Eckart, 39 NY2d 493, 499 [Wachtler, J.]), especially since the Averill decision is so recent that it is still in its legal cradle (People v Hobson, 39 NY2d 479, 488).
The door to consideration of the facts thus unlocked, their fuller recitation is now in order:
Complainant Charles Ghee is an honorably discharged Vietnam veteran who bears physical scars of his participation in that conflict. As a result of wounds to both legs, Ghee’s right thigh is scarred and shortened by one and a half inches, and he has limited flexibility in his right leg. However, he had adjusted so well to these impairments that he was able to hold down jobs as a heavy laborer in a factory and as a carpenter, doing much work outdoors.
The litigation before us had its genesis in an employment application complainant filed with the County of Monroe. After an interview with an administrator of the County’s Comprehensive Employment Training Act Program at which his disability was well aired, he was recommended for a position classified as Maintenance Mechanic II. The administrator chose that position by matching the applicant with the job specification.
In due course, the favorable employment recommendation ripened into approval and then appointment to the position, in which Ghee was assigned to work with the Monroe County Bureau of Traffic Control and Engineering. His duties included outdoor work during which he would be called upon to hang traffic control signs, lift poles, bolt signs to poles and lift jackhammers weighing over 25 pounds. During much of this time the temperatures were below freezing and a good deal of snow was on the ground. All the evidence points to complainant’s satisfactory completion of all his duties. Specifically, the record is barren of any indication that his performance was deficient in any respect; indeed, his vocational conduct was so *733 normal that his supervisor and fellow employees had not even become aware of the physical residua of his military service.
Several days after he had started work, Ghee underwent a routine physical examination by a county physician. Upon inquiring about the leg scars, the doctor ascertained that complainant was unable to sit on his heels in a full squat. The doctor did not ask about or test for the ability to lift objects or perform any of the other tasks that were part of his job. In due course, the doctor completed a report form that recommended that Ghee “should avoid” kneeling, lifting, sudden temperature changes and working outdoors. The report did not assert an inability to do so. But, without more, upon his superiors’ receipt of this report, complainant was relieved of his job.
At the brief hearing held after Ghee filed a complaint with the State Division of Human Rights, the only evidence the county produced as to the relationship between Ghee’s disability and his job was the doctor’s report and the official job description. No medical expert was called to testify that the impairment did in fact prevent the complainant from carrying out the tasks assigned him fully; or that his shortened leg was any less sturdy than the other; or that there was any consequent increase in the likelihood that he would incur injury for which the county might be liable; or that his medical rehabilitation, in which a disabled person is taught to develop and use otherwise neglected bodily motion and powers (Kessler, Accidental Injuries, Vocational Rehabilitation, pp 740-742), had not compensated completely for any he may have lost. To boot, no person familiar with the Maintenance Mechanic II position testified that assignments were likely to be encountered that were beyond the abilities of one with limited flexibility in one leg. In short no one — no supervisor and no fellow worker and no expert — testified that his work performance was anything but perfect. Based on this record, the hearing examiner could hardly have found otherwise than that “[c]omplainant’s condition does not render him unfit for the * * * position [of Maintenance Mechanic II]”. The Human Rights Appeal Board affirmed.
From all this I conclude that, both on the law and on the facts, today’s decision seriously and, as I have respectfully suggested, erroneously undercuts the restraint which until recently characterized our approach to the review of Human Rights Division and Human Rights Appeal Board determina *734 tions in the sensitive,. highly specialized and still far from fully tracked area of manifest public concern committed to their trust (see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 183-184; State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 209; Matter of Holland v Edwards, 307 NY 38, 45). To this I cannot assent.
Order affirmed, etc.