### CITY OF BROOKLYN v. MACKAY et al.

(Supreme Court, Appellate Division, Second Department. January 12, 1897.)

WHARVES—ON STATE LAND—ANNEXATION TO REALTY.

A wharf built by a riparian owner below the high-water mark on land belonging to the state does not pass by a subsequent grant by the state of the land below the high-water mark.

Appeal from special term, Kings county.

Proceeding by the city of Brooklyn against Catharine I. Mackay and others for the condemnation of land, riparian rights, and land under water. From a judgment and order in favor of petitioner, defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

J. C. Church, for appellants.

J. A. Burr, for respondent.

GOODRICH, P. J. This is a proceeding by the petitioner for the condemnation of land, riparian rights, and land under water for the purpose of the Shore Drive.

The land in question belongs to the defendant, Catharine I. Mackay, who, being owner of the upland, obtained a grant from the land commissioners, in 1895, of that portion of the land in question which was below high-water mark. One Wardell was the owner of an adjacent plot of upland on the north side of the Mackay plot, but he never obtained a grant from the land commissioners. Previous to 1872, the grantors of Wardell had erected a dock, which ran out into the water at about a right angle to the general course of the shore line, and beyond high-water mark. When the land grant to Mackay was made, the northerly line of his grant was run, not in the line of the dock, but at what was intended by the land commissioners to be a more equitable adjustment of the dividing line between the adjacent owners, and parallel to the extension of Bay Ridge avenue;

but this line ran diagonally through the dock, leaving to the south of such line, and upon the land granted to Mrs. Mackay, a long, triangular gore, extending out about 285 feet from the original shore line, the base of the triangle, at the water end, being about 25 feet in width. Wardell was in possession of and using the dock for a long period prior to the time of the land grant, and also at the time of the condemnation proceedings, but on December 31, 1895, executed a deed to the county of Kings of all his upland and land under water and water rights in front of his premises, together with "all the docks, piers, and bulkheads owned or occupied by the party of the first part, and all other water rights appurtenant thereto."

It is claimed by Mrs. Mackay that, inasmuch as she obtained a land grant for the land under water upon which the triangular gore of wharf was built, she obtained a title to the dock structure; in other words, that the action of the land commissioners in making a land grant to her, although the state made no claim to the dock, which had been built and was occupied by and in the possession of Wardell, resulted in a transfer to her of the title to the dock. The court of appeals, in the case of Wetmore v. Gaslight Co., 42 N. Y. 384, held that the public has no right to use wharves erected by the owners of lands adjacent to the navigable waters of the East river within the permanent water line of the city of Brooklyn, although such wharves extend beyond low-water mark, and were erected without the authority of the state. If the state sees fit to permit such structures to remain, no private individual has any right of entry upon them without the consent of the owners.

It will be observed that the dock as originally erected is within the exterior bulkhead line as laid down, under chapter 763 of the Laws of 1857, on the map which is one of the exhibits in the case, and it is nowhere contended that it ever constituted any obstruction to the free navigation of the bay; and, while it was built on land belonging to the state, and so remained until the grant to Mrs. Mackay, and while the state could have compelled its removal, so long as it remained, no person other than the builder could obtain any right therein or title thereto. The structure, if built out below high-water mark, and into the navigable waters of the bay, was unquestionably a purpresture and a nuisance. The state could undoubtedly have compelled its removal, but, so long as it remained, the occupant was entitled to its possession, and could collect wharfage. The Idlewild, 59 Fed. 628, affirmed 12 C. C. A. 328, 64 Fed. 603. But, until the state exercised this power, the dock remained the property of Wardell. Mrs. Mackay never gave any value for the dock, and the utmost that can be said is that the judgment works damnum absque injuria.

The judgment and order should be affirmed, with costs.

CULLEN, J. (concurring). The riparian owner, Wardell, had the right to construct a proper pier or wharf for his own use and that of the public, even though he had not obtained from the state a grant of the land under water. Rumsey v. Railroad Co., 133 N. Y. 79, 30 N. E. 654; Yates v. Milwaukee, 10 Wall. 497. This right was subject to general regulation by the legislature. At the time of the construc-

tion of the pier, the only regulations on the subject were the establishment of bulkhead and pier lines. There is nothing to show that the pier in question was improper. It was within the bulkhead line established by law. It extended substantially at right angles to the shore line of Wardell's upland, and at the time of its construction no part of the land on which it was erected had been granted by the state. It was, therefore, presumptively, a lawful structure, and the property of Wardell.

No absolute rule can be laid down as to on what particular lines structures must be extended by riparian owners. The irregularity of the configuration of shore lines prevents that. It may be conceded, without, however, so deciding, that the matter rests in the judgment of the land commissioners, and that, after they have acted, by making grants apportioning the lands under water among the owners of the adjacent uplands, a riparian owner may not erect a structure on lands granted to his neighbor. But this structure was built before the grant to Mackay. It is unnecessary to decide whether, after the grant to Mackay, Wardell could continue to maintain the pier against Mackay's protest. Assuming that he could not, he was at least entitled to maintain it until objection was made, and, after objection, he was further entitled to a reasonable time within which to remove the structure; for it was placed there in the first instance lawfully, and was his property. No demand for removal having been made, the right to the structure itself was not lost by Wardell, and passed to the city under his deed. Mackay has no title thereto.

The case of People v. Vanderbilt, 26 N. Y. 287, is not in point, for there the structure erected by the defendant was beyond the pier line established by law, and a nuisance. The foundation of the argument for the appellants is the assumption that a pier could not be constructed without a grant from the state of the land under water upon which it rested. This, probably, was the law in this state under Gould v. Railroad Co., 6 N. Y. 522; but, since the decision in the case of Rumsey v. Railroad Co., supra, it no longer obtains.

The judgment and order should be affirmed, with $10 costs. All concur.