## PEOPLE v. MOULD.

(Supreme Court, Appellate Division, Third Department. January 11, 1899.)

RIPARIAN OWNERS—PURPRESTURE—SUIT BY STATE FOR REMOVAL.

Where a riparian owner, without a grant from the state, builds a pier in the shoal water adjoining his premises to reach the navigable portion of a stream, and such pier does not obstruct navigation or interfere with any public use, the state cannot, without showing a public necessity therefor, compel the removal of the structure.

Merwin, J., dissenting.

Appeal from equity term.

Action by the people of the state of New York against Horatio D. Mould to compel the latter to remove a purpresture constructed by him on the Hudson river. From a judgment of the supreme court equity term (52 N. Y. Supp. 1032) in favor of plaintiff, defendant appeals. Reversed.

This action was brought by the plaintiff to compel the defendant to remove a wharf constructed by him on the easterly side of the Hudson river at Germantown, in Columbia county, extending between high-water mark and the navigable part of the stream in front of his uplands, on the ground that the same was a purpresture. In the year 1866, under an act of the legislature of the state of New York, a grant was made to the highway commissioner of the said town of Germantown of the lands under the waters of the Hudson river in front of a certain highway leading down to the shore. Subsequently the highway commissioner erected a wharf, called the "Town Dock," which covers the entire grounds granted to the highway commissioner under the waters of the Hudson, extending from high-water mark about 325 feet towards the channel of the Hudson, and being 66 feet broad. In or about the year 1881, George E. Lasher and William H. Wynans made an application for a grant of the lands under the waters adjacent to, and in front of, their uplands, which extended along the east shore of the Hudson river, southerly of, and adjoining, the south line of the town dock, with the exception of the slip, mentioned in the complaint in this action, which is about 75 feet broad, and extends from the front line of the town dock along its southerly side towards the shore about 180 feet. Thereupon a grant was made to Lasher and Wynans of all the lands under the waters of the Hudson river adjacent to their uplands, with the exception of the lands under this slip, extending into the Hudson river the same distance as the town wharf. The defendant is now the owner of the uplands in front of, opposite, and adjacent to all the waters south of the town dock for a distance of about 300 feet, and has succeeded to all the rights which Lasher and Wynans had in the said grant made to them by the commissioners of the land office. Prior to the beginning of this action, the defendant had built a wharf across the entire front of his uplands, including the slip in question, beginning at the southerly line of the town dock, without having secured any grant from the commissioners of the land

office of the lands under the waters of the Hudson river in said slip, or other grant than that made to Lasher and Wynans. The wharf so constructed by the defendant covers no lands under the waters of the Hudson river below high-water mark that are not in front of and adjacent to his uplands. The Hudson river at the point in question is a navigable stream, where the tide ebbs and flows from the Atlantic Ocean. The wharf erected by the defendant extends only to the channel or navigable part of the stream, and there is no proof that it is an obstruction to navigation. The water in front of the defendant's uplands, extending as far into the stream as his wharf is built, is shallow, not navigable for any river craft, and portions of it at low tide extend above the surface of the water. It is claimed by the appellant that from the complaint, and the evidence offered on the trial by the plaintiff, it appears that the purpose of the action was to protect the town dock, and to preserve for its use the slip in question in front of defendant's premises. The question raised by the defendant at the trial was, can the state by action compel a riparian owner of lands on the shores of the Hudson river to remove a wharf erected by him, without a grant from the state, in front of his uplands, reaching to the navigable part of the stream, on the ground simply that it is a purpresture, when it is not shown that such wharf is actually a nuisance or obstruction to navigation, or that the interests of public commerce or navigation require it, or that any necessity exists why the state should improve the water in front at that place? The trial court awarded a judgment in favor of the plaintiff for the relief demanded in the complaint, and the defendant has taken an appeal to this court.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Patterson, Bulkeley & Van Kirk (C. C. Van Kirk, of counsel), for appellant.

T. E. Hancock, Atty. Gen., and A. Frank B. Chace & Sons (A. Frank B. Chace, of counsel), for the People.

PUTNAM, J. The defendant has constructed his wharf in the Hudson river between high-water mark and the navigable part of the stream, without having obtained a grant from the commissioners of the land office of a portion of the land under water on which the structure is placed. It is conceded that the title of lands under the tide water of the Hudson river is vested in the state as trustee of a public trust, and that the defendant's ownership of the uplands adjoining the slip in question gave him no title to the land under water in front of his premises. People v. New York & S. I. F. Co., 68 N. Y. 71, 76, 77; Langdon v. Mayor, etc., 93 N. Y. 129; Sage v. City of New York, 154 N. Y. 61–73, 47 N. E. 1096. The act of the defendant in erecting a structure on the lands of the plaintiff, and appropriating such land to his own use, has been called a purpresture, which might in a proper case be abated by an action in the name of the people. People v. Vanderbilt, 26 N. Y. 287, 293, 28 N. Y. 396; Ice Co. v. Shultz, 116 N. Y. 382, 387, 22 N. E. 564. The right which the defendant had as a riparian owner in the Hudson river at the place where he erected his wharf is stated in the opinion in Sage v. City of New York, supra, as follows:

"While the title of such owners did not extend beyond the dry land, they were entitled, as against all but the crown as trustee for the people at large, to certain valuable privileges or easements, including the right of access to the navigable part of the river in front for the purpose of loading and unloading boats, drawing nets, and the like. Rumsey v. Railroad Co., 133 N. Y. 79. 30 N. E. 654; Saunders v. Railroad Co., 144 N. Y. 75, 87, 38 N. E. 992; Ang. Tide Water, 22, 64. These riparian rights were property belonging to the

riparian owner, who could not be deprived of them without his consent, or by due process of law, although he could only use them subject to the rights of the public."

In the same opinion, also, the following language is used:

"Although, as against individuals or the unorganized public, riparian owners have special rights to the tideway that are recognized and protected by law, as against the general public, as organized and represented by government, they have no rights that do not yield to commercial necessities."

And in Saunders v. Railroad Co., 144 N. Y. 75, 87, 38 N. E. 995, O'Brien, J., uses the following language:

"What these rights are has been decided in the Rumsey Case, 133 N. Y. 79, 30 N. E. 654, and since that decision reaffirmed in the case of Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 Sup. Ct. 110. They embrace the right of access to the channel or navigable part of the river for navigation, fishing, and such other uses as commonly belong to riparian ownership, the right to make a landing wharf or pier for his own use or for that of the public, with the right of passage to and from the same with reasonable safety and convenience."

The same doctrine is stated in Rumsey v. Railroad Co., 133 N. Y. 79, 87, 30 N. E. 654; Yates v. Milwaukee, 10 Wall. 497; Illinois Cent. R. Co. v. Illinois, 146 U. S. 387–445, 13 Sup. Ct. 110; City of St. Louis v. Rutz, 138 U. S. 226, 246, 11 Sup. Ct. 337; Black, Pom. Water Rights, § 250. It is said, however, in the authorities referred to, that the right of a riparian owner whose land is bounded by a navigable river, of access to the channel thereof, and to make a landing pier or wharf for his own use or that of the public, is subject to the superior right of the state, as trustee for the people at large. In Sage v. City of New York, supra, the riparian right is spoken of as existing "as against all but the crown [the state], as trustee for the people at large." So, in other authorities, this riparian right is spoken of as a valuable property right, but one that must be held subject to the superior right of the state. Under the authorities above cited, it will not be denied that had the state required the use of that portion of the Hudson river where the defendant erected his pier for a legitimate public purpose, or, if the pier interfered with navigation, or with any public right or interest, or if shown to be an actual nuisance, that an action to compel its removal could have been maintained. In this case, however, the court found that the pier "extends only to the channel or navigable part of the river, and there is no proof that it is an obstruction to the navigation of the stream"; nor is it shown that it interferes with any right of fishery, or any other public use; hence it was not shown to be an actual nuisance, unless the mere fact of its being a purpresture makes it such. The defendant, in erecting it, under the authorities to which we have referred, was not doing an unlawful act. As riparian owner, although not the owner of the soil under the water, he possessed an easement in the stream opposite to and adjoining his premises, a right of access to the navigable part of it, and, as the water near the shore was shallow, a right to erect a pier in order to reach such navigable portion. As said in Yates v. Milwaukee, supra, "This riparian right is property, and is valuable, and, though it must be enjoyed in due subjection to the rights of the public, it cannot be arbitrarily or capriciously destroyed or impaired." But, as the defendant had not

obtained a grant from the commissioners of the land office in erecting his landing, he exercised this riparian right subject to the power of the state, in a proper case, to interfere.

Under the facts appearing in this case, can the state by action compel the defendant to remove his landing? As above suggested, the structure does not affect navigation, or any public right or interest. It was not shown to be an actual nuisance. The fact that it prevents the landing of vessels on the south side of the town dock is no ground for its removal. The grant of the commissioners of the land office to the highway commissioner of the town of Germantown of land under water, opposite a certain highway leading down to the shore of the river, only gave the grantee a right in the river opposite the road. The commissioners of the land office could give him no other right. They could not confer upon such grantee a right in the river at the place where the defendant erected his pier, adjoining and in front of his uplands. Ice Co. v. Shultz, 116 N. Y. 382, 388, 22 N. E. 564; Jenks v. Miller, 14 App. Div. 474, 480, 481, 43 N. Y. Supp. 927. The question presented to us, then, is whether, when a riparian proprietor has exercised the right, which the authorities hold he possesses, of building a pier in the shoal waters adjoining and in front of his premises, for the lawful purpose of being able to reach the navigable part of the stream, such pier not obstructing navigation, or interfering with any right of fishery or other public use, and it is not claimed that the place where the pier is erected is required for any public purpose, the state can, without showing a public necessity therefor, interfere, and maintain an action for the removal of the structure. We are not referred to any authority where, under such a state of facts, an action like this has been sustained. In Attorney General v. Richards, 2 Anstr. 603, it was stated that the defendant erected a wharf, dock, and buildings in Portsmouth harbor so as to prevent boats sailing over the spot or mooring there, and also to cause further damage to the harbor by preventing the free current of water to carry off the mud. In other words, the structures placed in the harbor by the defendant were shown to be an actual nuisance. In the case of People v. Vanderbilt, 26 N. Y. 287, 28 N. Y. 396, the defendant sank a pier outside of the line established by law, in the harbor of New York, and thus was also shown to have created an actual nuisance. In People v. New York & S. I. F. Co., 68 N. Y. 71, the defendant's predecessors in title had obtained a grant from the state of lands under the water in front of his uplands on Staten Island. The defendant, when the action was commenced, was about to build a pier and other structures on the land so granted, of greater width and extending further into the bay of New York than authorized by law. The act enjoined was held to be a clear violation of the statute. So, in other authorities cited, the purpresture condemned was an actual nuisance, or created in violation of law. In the opinions, however, in some of those authorities, language is used which seems to sanction an action under circumstances such as appeared in this case. In People v. Vanderbilt, 26 N. Y. 287, 293, it is said:

"If the injury complained of be a purpresture, it may be abated and removed at the suit of the attorney general in England, and, of course, of the people in this state, whether it be a nuisance or not. 2 Wat. Eden, Inj. p.

259, c. 11; Attorney General v. Richards, 2 Anstr. 603. Being an encroach-
ment on the soil of the sovereign, like trespass upon the soil of a private indi-
vidual, it will support an action, irrespective of any damage which may ac-
crue."

See, also, Ice Co. v. Shultz, 116 N. Y. 382, 387, 22 N. E. 564; City
of Brooklyn v. Mackay, 13 App. Div. 105, 107, 42 N. Y. Supp. 1063. In
People v. Vanderbilt, 28 N. Y. 396, 399, Emott, J., uses the following
language:

"The crib sunk by the defendant and the proposed pier were a purpresture,
and were per se a public nuisance. See 2 Wat. Eden, Inj. p. 259, c. 11. The
offer, therefore, of the defendant's counsel to prove by the testimony of wit-
nesses that the crib and proposed pier were not and would not be an actual
nuisance, and would not injuriously interfere with or affect the navigation
of the river or bay, was properly overruled."

And see, also, remarks of Potter, J., in Canal Co. v. Lawrence, 2 Hun,
180, 181; Rex v. Ward, 4 Adol. & E. 384; Attorney General v. Cohoes
Co., 6 Paige, 133. But, in the several authorities where such a doctrine
has been advanced in the opinions delivered, the structures held to be
unlawful purprestures were in fact actual nuisances. In Attorney
General v. Richards, People v. Vanderbilt, People v. New York & S. I.
F. Co., City of Brooklyn v. Mackay, supra, the piers which were con-
demned as unlawful purprestures were placed in the harbor, and neces-
sarily interfered with navigation, and produced or might produce an
injury to the public. The opinions delivered in those cases should be
considered in reference to the facts appearing therein. The structure
erected by the defendant was not in a harbor or navigable portion of
the river; it was built in the shoal water near the shore, to enable the
defendant to reach the navigable part of the river. In building it he
took the risk of the interference of the state. His right to build the pier
was subject to the superior right of the state. If the state required the
land for any legitimate public purpose, it was entitled to its possession.
But the state was not shown to require the land under the water
where the defendant erected his pier. The defendant also took the risk
of the interference on the part of the state if his pier in any way should
interfere with or endanger the rights or interests of the general public.
But no such injury or interference was proved. The state, therefore,
in this action arbitrarily asks to have the defendant's pier removed with-
out claiming any injury whatever therefrom. How has the defendant
interfered with the rights of the state? He had an easement, in the
river, a right to reach the navigable part of it over land under the
water owned by the state, and he has only done what was necessary to
obtain the benefit of that right. The state continues to be the owner
of the land subject to defendant's easement. If ever required for any
public purpose, it can obtain possession thereof. The state at any
time hereafter, if the defendant's pier shall prove an injury to any
public right or interest, and hence a nuisance, can cause its removal.
The erection of the structure by the defendant has not interfered with
any actual right or interest of the state. We think there is a clear
distinction between this case and such authorities as People v. Vander-
bilt, City of Brooklyn v. Mackay, Attorney General v. Richards, People
v. New York & S. I. F. Co., supra, and kindred cases, where the purpres-

ture was in a harbor or a navigable part of the river, and necessarily interfered with navigation, and was therefore a nuisance per se.    We are unable to see that the plaintiff established the fact that it had sustained any such injury by the action of the defendant as required the interposition of the court below.    The state, it is true, owned the land under water where defendant placed his structure.    But its ownership of such land was subject to the defendant's easement, to his right of access to the navigable portion of the stream over such land if not required for a public purpose.    This easement of the defendant was a valuable property right, which, as said in Yates v. Milwaukee, supra, "cannot be arbitrarily or capriciously destroyed or impaired."    The defendant has only done what was necessary to be done to obtain the benefit of his easement,—what the authorities determine he had a legal right to do,—without creating a nuisance.    The state does not require the land where the pier in question is placed for a public purpose. Hence the state has sustained no damage in consequence of the structure complained of, and the act of the defendant should be deemed a lawful exercise by him of his right to reach the navigable part of the river.    It has been held that where the state, as a plaintiff, invokes the aid of a court of equity, it is subject to the rules applicable to ordinary suitors.    And the principle has been established that an injunction will not be granted unless injury, actual and material, and not fanciful, shall be shown.    People v. Canal Board of State of New York, 55 N. Y. 390; Genet v. Canal Co., 122 N. Y. 505, 529, 25 N. E. 922; Gray v. Railroad Co., 128 N. Y. 499, 509, 28 N. E. 498; 10 Am. & Eng. Enc. Law (1st Ed.) p. 786; Beach, Inj. § 1067; People v. Metropolitan Tel. Co., 31 Hun, 596, 604.    In the case last cited, brought by the people to compel the removal of telegraph poles from a public street, claimed to be an unlawful purpresture, the following language was used by Daniels, J.:

"For the damages resulting from the injury were so trifling in their amount as to deprive the action of every serious attribute which could be made the subject of equitable complaint; and 'equity will not interfere * * * to remedy a mere technical or theoretical injury to land.' 2 Story, Eq. Jur. (12th Ed.) § 925.    To secure its interposition there must be some gravity to the complaint presented as the subject-matter of the action, for equity will only intervene to prevent irreparable injuries, or to avoid multiplicity of suits. Hil. Inj. 270–272; Attorney General v. Gas Co., 19 Eng. Law & Eq. 639; 3 Wait, Act. & Def. 707."

As we have endeavored to show, in this case no damage or injury to the state, or the public represented by it, was shown on the trial of the complaint, in consequence of the erection of the landing by the defendant, and hence the plaintiff was not entitled to the relief demanded in the complaint.    From the complaint and evidence offered by the plaintiff, it is to be inferred that the action was brought for the benefit of the owners of the town dock, to preserve to them the use of the water of the Hudson river south of said dock and in front of defendant's uplands,—a right which, under the statute, the commissioners of the land office could not transfer to such owners, and which should not be awarded to them by the judgment of this court.    Our conclusion is that the judgment should be reversed, and a new trial granted, costs to abide the event. · All concur, except MERWIN, J., dissenting.