### CITY OF YONKERS v. PALISADE FERRY CO.

(Supreme Court, Appellate Division, Second Department. May 8, 1899.)

1. PUBLIC WHARVES—LEASE—LESSEE HOLDING OVER.

A wharf erected by a city on a site belonging to it slid over partly onto waters belonging to others, and thereafter a ferry company leased from the city the exclusive privilege of landing passengers on the side which had so slid over. After so using the wharf for several years, during which time the lease was renewed from time to time, the ferry company leased the lands opposite that part of the wharf slid over, and the land under the water under it, but continued to use the wharf in the same manner it had used it under the lease. *Held*, that the ferry company continued liable for the value of the use of the dock, its use thereof having been under the lease.

2. SAME—RENTAL.

The use being the same as when continuing under the lease, its value was determined by the rental stipulated for a like period in the lease.

Appeal from city court of Yonkers.

Action by the city of Yonkers against the Palisade Ferry Company. There was a judgment for defendant, and plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

James M. Hunt, for appellant.
Ralph E. Prime, for respondent.

GOODRICH, P. J.   The complaint alleges that the plaintiff is a
municipal corporation; that its common council is authorized to
maintain and regulate the use of the public pier or wharf which lies
near the westerly end of Main street, in the city of Yonkers; that in
June, 1894, the common council granted permission to the defendant
to land passengers from its ferryboat at such wharf, upon paying the
sum of $200, which amount was fixed by the common council as a
reasonable charge for such use and privilege; and that the "defend-
ant continued to land passengers at such public wharf, and paid $200
for such use," during the years 1894, 1895, and 1896, but did not pay
such sum for the use in 1897, although such sum was fixed by the
common council for that use during that year.   The answer sets up
as a defense a denial of the use of the plaintiff's property during 1897,
and that during that year the defendant's ferryboat landed its passen-
gers upon other property than that of the city, which it had leased
from the owners thereof.   A reference to the following diagram will
assist in understanding the situation:

In 1882 the city of Yonkers obtained from the state a grant of the
lands under water of the Hudson river, in front of the city property,
—the line of which grant is shown upon the diagram,—and erected
upon said lands the dock in question.   There is evidence that the
northerly side of the dock had sagged or slid to the northward for a
distance of three or four feet, as shown by what is marked as the
"Slide Line," and this was the condition of the dock at the time of
the original lease to the defendant.   Upon this slide line the defendant
erected gates, through which the public had access to the defendant's
platform and ferryboat.   All of that portion of the dock lying north-
erly of the line of the city grant, and which had slid over, as already
stated, lies in front of what is known as the "Lemuel Wells Patent";
and of this patent, and the land under water in front of it, the defend-
ant became lessee in 1896; but the gates and other structures re-
mained as they were in 1894.

We are not called upon to decide what rights the defendant acquired, by the lease under the Wells patent, to the use of the structures in the open water in front of the Wells upland. The plaintiff's right of recovery in this action depends upon the defendant's continued use of the gates in the same manner as they were used under the lease from the city in previous years. So long as that use continues, the defendant remains liable for the value of the use, and that value is determined by the original contract, and the continuing use under unchanged physical conditions. It may be conceded that the city's lock is a public one, and that under the decisions the public have a right to use it as a public street. People v. Mallory, 2 Thomp. & C. 76; People v. Macy, 62 How. Prac. 65. But the defendant's use goes further than the use which is made of the dock by the public generally. It has the gates and uses them exclusively. It lands its passengers through the gates, and forbids other access of the public. In City of Brooklyn v. Mackay, 13 App. Div. 105, 42 N. Y. Supp. 1063, we held that the occupier of a wharf, although built on land belonging to the state, was entitled to its possession, and could collect wharfage so long as the state did not interfere. The difficulty with the defendant's contention is that the use which it now makes of the city's property is in no wise different from the use it made of it under its contract with the city in 1894. The dock had slid to its present position at that time, and the gates were erected upon the stringpiece, and remained there, and were used by the defendant during 1897. Even had the original contract been ultra vires on the plaintiff's part, that fact would not have prevented the plaintiff's recovery for the use during the years, 1894, 1895, and 1896; and, as the defendant continued during 1897 to use the gates identically as before, it became bound to pay the value of such use. Light Co. v. Claffy, 151 N. Y. 24, 45 N. E. 390; Cooper v. City of Brooklyn, 11 App. Div. 71, 42 N. Y. Supp. 762. For these reasons the judgment must be reversed, and a new trial ordered.

Judgment reversed, and new trial granted; costs to abide the event. All concur.