(35 Misc. Rep. 523.)

### SUMNER v. CITY OF GLOVERSVILLE.

(Supreme Court, Special Term, Saratoga County. July, 1901.)

WATER AND WATER COURSES—DIVERSION—LOWER RIPARIAN OWNER—RIGHTS.
    Where a city, under legislative authority, has impounded certain streams tributary to a river for its water supply, it is not liable for damages resulting from the water thus diverted to a manufacturer on the river 32 miles below, employing both steam and water power; it appearing that at low water the water thereafter flowing in the river was a thousand times the amount diverted, and that the amount diverted would create less than two-horse power in a working day, and that the

manufacturer's dam is leaky, and has been permitted to remain in that condition for a long period of time.

Action by Alanson A. Sumner against the city of Gloversville to recover damages for the diversion of waters of a river. Complaint dismissed.

D. H. McFalls and M. D. Murray (Edgar T. Brackett, of counsel), for plaintiff.

James H. Drury (Frank Talbot, of counsel), for defendant.

HOUGHTON, J. The plaintiff is the owner of a water power on the Sacandaga river at Conklingville, in Saratoga county. The Sacandaga river empties into the Hudson about 7 miles below the plaintiff's premises, and is the largest tributary of that river. It rises in Hamilton county 80 miles or more from its mouth, and has a watershed averaging 40 to 50 miles in breadth. Innumerable streams flow into it, one of which is the Mayfield creek. Near the head waters of Mayfield creek, and 32 miles from the plaintiff's dam, the defendant has constructed reservoirs and intakes upon 5 streams, for the purpose of furnishing a part of the water for its municipality and inhabitants. The ordinary minimum flow of these streams is 2,232,000 gallons per day. The defendant has taken only an average of 1,000,-000 gallons of this flow. This taking began 15 years ago. The soft timber has been practically cut from the Sacandaga valley for 20 years, and the water in the Sacandaga river has been gradually growing less since that time, and the testimony shows that it is one-third less now than it was before 1880. This diminution of water applies to all the tributaries of the river, the streams appropriated by the defendant as well as the others. It is only in extremely dry periods that water does not flow past defendant's dams and reservoirs, and it is only for short periods that such flow is impeded. The plaintiff's dam, up to a year ago, was about 7 feet in height, and was an old dam, which leaked at all times of the year. The defendant's pondage runs back 12 to 14 miles. The amount of water in the Sacandaga river at low water is a thousand times greater than the amount of water taken by the defendant. The plaintiff's dam is 300 feet in width, and the 1,000,000 gallons taken by the defendant in each 24 hours would make a difference of about one-sixth of an inch in the depth of the water at the dam. The plaintiff used steam in his mill for a long time prior to the erection of defendant's water system. His manufactory is run 10 hours a day. With the head which he has, the 1,000,000 gallons taken by the defendant in 24 hours would make 1.88 horse power for 10 hours. The plaintiff brings this action against the defendant to recover damages for perceptibly and materially diverting and diminishing the water at his mill. The defendant insists that the Sacandaga river is a public stream, the title to the bed of which is in the people, and that the plaintiff owns only to ordinary high-water mark, and not to the thread of the stream, as in ordinary cases, and that because the legislature authorized the defendant to construct its water system, and take the water of a part of the tributaries of the river, the plaintiff has no standing. The maps of the early patents describe the Sacandaga river as the

71 N.Y.S.—69

west branch of the Hudson, and the grants are bounded by the banks of the stream. From this the defendant deduces that the people still retain title to the bed of the stream, and that the rule which has been applied to the Hudson river is applicable to the Sacandaga. The courts have repeatedly held that the rule was different with respect to the ownership by riparian proprietors on the Hudson and Mohawk rivers from that which applied to other rivers of the state. This arose from the language of the grants along these two rivers, which were construed by the rules of the civil law prevailing in the Netherlands, from whose government title was derived. The bed of the Hudson river below Waterford has been conceded to belong to the people of the state, and the rights of riparian owners have been treated in a quite different manner from those upon that portion of the river above that point. The courts, at an early date, however, did extend the rule as far north as Stillwater (Palmer v. Mulligan, 3 Caines, 308, 2 Am. Dec. 270), which is 50 miles or more further down the river than the mouth of the Sacandaga. I do not think it has been generally understood that the rule of law that the riparian owner upon the Hudson owned only to ordinary high-water mark was applicable to the upper Hudson above Glens Falls. Without deciding that point, however, I think the plaintiff, as riparian owner, even if the Sacandaga river be construed to be a public stream, and the title to its bed in the people, has the right to have the water flow past his premises, and has the right to use the water as against every one except the people of the state, and as against them even, only that he shall not interfere with public navigation; and that the legislature had no authority to give to the defendant the privilege of unlawfully diverting the head waters of any of the tributaries of the river. Even upon the Hudson river below Waterford, it is held that the state cannot compel a riparian owner to remove a wharf constructed upon the shoals in front of his uplands, unless it is shown that the wharf is actually a nuisance, or an obstruction to navigation, and interferes with the public right to use the stream. People v. Mould, 37 App. Div. 35, 55 N. Y. Supp. 453. The Sacandaga river is not actually navigable below the plaintiff's premises, and navigable above only for a comparatively short distance. Even if it be treated as a purely navigable river, the bed of which is owned by the people of the state, it is no defense to a person doing injury to a riparian owner's rights. Palmer v. Mulligan, 3 Caines, 311, 2 Am. Dec. 270.

The right to use water as it flows is a property right, yet the water itself is not the subject of exclusive ownership or dominion either by the sovereign power or an individual. Sweet v. City of Syracuse, 129 N. Y. 335, 27 N. E. 1081, 29 N. E. 289. Riparian owners, therefore, upon navigable streams even, as against other individuals, have the right to use the water as it flows past their premises; and whether a dam or other structure is a public nuisance is not for the wrongdoer to say, but that question is between the people and the riparian owner. Stiles v. Hooker, 7 Cow. 266; Harris v. Thompson, 9 Barb. 350.

Even if the defendant was authorized by act of the legislature specifically to take the water of some of the tributaries of the Sacan-

daga river, this would be unavailing as a defense to an invasion of the rights of the plaintiff, because the state has no right to convert the waters, or authorize their conversion, for any other use than the purposes of navigation. Smith v. City of Rochester, 92 N. Y. 464, 44 Am. Rep. 393. I think the case at bar, therefore, is to be passed upon irrespective of whether the state owns the bed of the Sacandaga, or whether the legislature, owning the bed of the river, authorized the defendant to appropriate for its water system some of its tributary streams; and the question is, whether or not the taking of one one-thousandth part of the water of the stream upon which the plaintiff's dam is situated, under all the circumstances disclosed, is such a perceptible and material diminishing of the flow as will compel the court to recognize it, and award damages therefor.

Conceding to the utmost the plaintiff's rights upon the stream, I think judgment must be for the defendant. The use of water by riparian owners is always subject to the use by others. The use by an upper riparian owner always interferes somewhat with the use by a lower riparian owner. Each, having a right, may exercise that privilege in a reasonable way, even if it inconveniences the other. All municipalities must be supplied with water. If, in the taking of that, there is immediate perceptible damage to a lower riparian owner, he must be compensated. But there must be an end to damage or injury which the courts are required to recognize and compensate for. Technically, the taking of any quantity of water injures a riparian owner, however distant he may be. In the dry season, even a little water which is taken at various points from an extensive stream, running through a thickly inhabited district, in the aggregate, may diminish the flow at a lower point. If the courts are to recognize such diminutions, and give nominal damages therefor, interminable litigation would result, and ruinous expense be incurred by every village and city. The taking of the 1,000,000 gallons which the defendant takes, if it affects the plaintiff in such manner as to compel the court to award him damages, would compel the court to give damages, actual or nominal, to every mill owner on the Hudson river from the point where the Sacandaga enters. Steamboat companies navigating the Hudson might have a right of action, as well as riparian owners along its banks, until it flows into the ocean, because it must be confessed that some water has been taken, and thereby the flow somewhat diminished. The same principle would allow the power companies at Niagara Falls to maintain actions against the city of Chicago and the various cities along the borders of the Great Lakes taking water for their municipalities. But the courts do not recognize such infinitesimal injuries, and hence the rule, which has been such as long as the law has been formulated, that there may be injury without damage. The necessity that municipalities be supplied with water, which can ordinarily only be obtained by taking it from some large stream or some tributary to it, makes it incumbent upon the courts to refuse to give damages for a mere technical injury.

But a complete answer to the claim of the plaintiff is that he could have prevented the injury if he had kept his dam in such condition

as to hold the water which flowed past his premises. The proof shows that at all times during the dry season the dam was in such a leaky state that more water flowed through it than was taken by the defendant. The action is for actual damages suffered. These are the diminished rental value of the plant as it was, or, at most, what it would cost to create the lost power. If the defendant is liable at all, it is liable not for the possible injury in case plaintiff had had a better dam and mill, which could have done more effective work, but for the actual injury done to him as the plant then was. Gallagher v. Water Co., 25 App. Div. 84, 49 N. Y. Supp. 250. The plaintiff could not allow holes to remain in his dam, through which more water was lost than the defendant took, and then complain that he did not have water enough to run his mill, and charge that lack of water to the defendant, when by stopping the holes he would have had sufficient. It is a rule, recognized in all classes of actions for damages, that a party who seeks damages from another must have done what he reasonably could to diminish the injury and reduce the damage. Hogle v. Railroad Co., 28 Hun, 363. The plaintiff could not, therefore, stand by and say that he would do nothing towards keeping his dam in proper repair so that it would hold the water which did actually flow, and then ask the defendant to pay all damages for loss of power, when, if he had put reasonable repairs upon his dam, he would have suffered no loss.

The complaint must be dismissed upon the merits, with costs. Decision may be prepared in accordance with the above.

Complaint dismissed, with costs.