MCLENNAN, SPRING and DAVY, JJ., concurred; HISCOCK, J., not sitting.

Judgment affirmed, with costs.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. NIAGARA FALLS HYDRAULIC POWER AND MANUFACTURING COMPANY, Appellant, *v.* THOMAS J. SMITH and Others, as Assessors of the City of Niagara Falls, New York, Respondents.

*Use of the water of a river for manufacturing purposes by a riparian owner — it does not constitute a franchise, although defined by statute — its value enters properly into an assessment for taxation.*

The right of the Niagara Falls Hydraulic Power and Manufacturing Company to draw water from Niagara river for the purposes of its business, which right is confirmed and defined by chapter 968 of the Laws of 1896, is not a franchise but an incorporeal hereditament appurtenant to its land, and the value of such right should be considered in assessing its land for the purposes of taxation.

APPEAL by the relator, the Niagara Falls Hydraulic Power and Manufacturing Company, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Niagara on the 6th day of May, 1901, quashing a

writ of certiorari theretofore issued to review the assessment of relator's property and denying the prayer of the relator's petition.

*Eugene Cary,* for the appellant.

*Franklin J. MacKenna,* for the respondents.

Order affirmed, with ten dollars costs and disbursements, upon opinion of CHILDS, J., delivered at Special Term.

McLENNAN, SPRING, WILLIAMS, HISCOCK and DAVY, JJ., concurred.

The following is the opinion of CHILDS, J., delivered at Special Term :

CHILDS, J. :

The relator is a private corporation, organized under the Business Corporations Law of 1875. (Laws of 1875, chap. 611.) It is the owner in fee of the property embraced in the assessment here sought to be reviewed, which is situate wholly within the tax district of the city of Niagara Falls, and consists of a canal and power plant, extending from a point on the Niagara river above the falls to a point on the Niagara river below the falls, such premises being used as an entirety ; they embrace, *first,* lands under the waters of the Niagara river, near the mouth or intake of the relator's canal ; *second,* the canal proper, being a strip of land 100 feet wide and about one mile long through the heart of the city of Niagara Falls ; *third,* the canal basin near the edge of the high bank of the Niagara river below the falls ; *fourth,* a strip of land from the canal basin to the edge of the high bank containing sluiceways ; *fifth,* land below the high bank of the Niagara river about 4,000 feet long and 160 feet wide ; *sixth,* the power house, with machinery and appurtenances, on land below the high bank.

The canal was constructed for power development, and was first used in or about the year 1857, and was acquired by Mr. Jacob F. Schoellkopf and his associates as individuals in or about the year 1878. The entire property embraced in the assessment was subsequently deeded to the relator, which has since continued to own and hold it. All of the land on the American shore of the Niagara river, between the intake of relator's canal at Port Day (so called)

to the brink of the Falls of Niagara, was acquired by the State of New York for a State park in the year 1883, in pursuance of chapter 336 of the laws of that year. The relator has received and accepted the grants of land under the waters of Niagara river at Port Day, extending into and under said waters of said river for a distance of more than 200 feet from the bulkheads at the head of its canal, over which lands all waters taken into said canal are drawn.

In the year 1896 the Legislature of the State passed an act (Laws of 1896, chap. 968) entitled, "An Act confirming and defining certain Riparian Rights of The Niagara Falls Hydraulic Power and Manufacturing company," of which the following is a copy:

"SECTION 1. The right of The Niagara Falls Hydraulic Power and Manufacturing company to take, draw, use and lease and sell to others to use the waters of Niagara river for domestic, municipal, manufacturing, fire and sanitary purposes, and to develop power therefrom for its own use and to lease and sell to others to use for manufacturing, heating, lighting, and other business purposes, is hereby recognized, declared and confirmed, and the exercise thereof by said company, its successors and assigns, to take and to draw water from Niagara river for use and disposal to others to use for the purposes above specified, and for the development of power for use, and for disposal to others to use, for purposes above mentioned is hereby limited and restricted to such quantity of water as may be drawn by means of the hydraulic canal of said company when enlarged throughout its entire length to a width of one hundred feet, and to a depth and slope sufficient to carry at all times a maximum uniform depth of fourteen feet of water, provided that exercise by said company of the rights hereby declared and confirmed shall not impair the practical navigation of Niagara river.

" § 2. This act shall take effect immediately."

The position of the relator is that its right to draw water from the Niagara river is a franchise and as such not assessable; that the assessment of its property as a whole, including such water rights, is illegal; that its property, for all purposes of assessment, must be treated as though no water right or privilege was attached to and used in connection therewith; that the true basis for assessment is

the cost of reproducing the relator's property, exclusive of any water right.

The relator, as a riparian owner and as owner of the lands under the waters of the Niagara river adjacent to its uplands from which the water is immediately taken, has the right to the use of the waters of the river for manufacturing purposes, and to divert the same for that purpose, returning them to the river, as it does, after passing over its own lands (Gould Waters [3d ed.], § 213; *People* v. *Tibbetts*, 19 N. Y. 523; *People* v. *Canal Appraisers*, 33 id. 461; *Chenango Bridge Company* v. *Paige*, 83 id. 178; *Smith* v. *City of Rochester*, 92 id. 480; *Groat* v. *Moak*, 94 id. 115; *Sweet* v. *City of Syracuse*, 129 id. 336), subject only to the paramount right of the State to utilize these waters for a public use, without compensation to such riparian owners; all riparian rights remaining unimpaired until the exercise of such paramount right by the State. This being so, it appears that the relator, as riparian owner, had the right to take waters from the Niagara river for manufacturing purposes, not interfering thereby with the navigability of the stream, such right being in no sense in the nature of a franchise but a corporeal hereditament, not depending either upon grant or prescription. This subject is fully discussed in chapter 6 of Gould on Waters (3d ed.) at page 393, to which reference is made. And this view of the relator's rights is confirmed by the act of 1896, above quoted, which in terms confirms and defines the *riparian rights* of the relator and is wholly inconsistent with the claim of the relator as to the nature thereof. The fact that the State might destroy relator's riparian rights does not convert such right into a mere franchise. Interference with the relator's rights by the State is a contingency too remote to require serious consideration.

We learn from the map in evidence that Niagara river, at all the points affected by the exercise of the relator's rights, is an unnavigable stream and will so remain, and when it is considered that not even the State is at liberty to interfere with the riparian rights of the relator arbitrarily, but that such interference, if attempted, must be in the interest of some substantial right of the State affected by the exercise of the right of the relator to use the waters of the river, the claim of the relator appears to be wholly unfounded. (*People* v. *Mould*, 37 App. Div. 35.)

Having reached the conclusion that the relator, in the use of the waters of the river, is in the enjoyment of its riparian rights, acquired before 1896, and confirmed by the act of the Legislature of that year, it becomes unnecessary to examine the other questions argued by both the relator and the defendants. In reaching this conclusion, the cases cited by the relator have been carefully examined, and the arguments in support of its contention fully considered, and no benefit could result from considering the same further in this opinion.

The stipulation of the parties submitted on this argument, to the effect that "if it is decided as matter of law that relator's water rights and right to take water from the Niagara river are elements which the assessors may have properly considered in fixing the valuation upon relator's said property, the assessment made by them of relator's said property for the year 1900 shall not be reduced," renders it unnecessary to examine the basis upon which the assessors have fixed the value of the relator's property and included the same in the roll.

The relator's writ should be quashed and set aside, with costs to the defendants.

Let an order be entered accordingly.