Irving S. Aronin, J.
This is a motion made by the third-party defendant to dismiss the complaint of the third-party plaintiff pursuant to CPLR 3211 on the ground that the said complaint fails to state a cause of action.
The third-party plaintiff herein is a caterer operating an establishment known as the Aperion. On July 25, 1966, the third-party defendant engaged the services of the caterer and its premises for his daughter’s wedding to be held on june 24, 1967. Both parties executed a one-page document (letter size) with the word Agreement on the upper left side of the front page. Without dwelling too long on this executed document, suffice it to say that the front portion contained all the terms pertaining to the payments, services to be performed and items furnished. Both parties signed the front portion of this Agreement in two places, once approximately halfway down the page and the second time on the bottom. Beneath the first signatures of the parties there appeared a legend in somewhat bolder and smaller types than the rest of the printed page, which recited “ All Conditions on Reverse Side Are Binding to Both Parties.”
The reverse side of this agreement had imprinted thereon, in much smaller type than the front side, 30 rules and conditions with ‘ ‘ Rule ’ ’ 25 being directly involved in this motion. “Rule” 25 stated as follows: “Patron agrees to indemnify and save harmless caterer and its servants and agents from any and all claims, liabilities, loss, demands or actions whatsoever for any personal injuries, death or property damages to any persons attending the affair hereby contracted for due to any reason. or cause whatsoever, even though arising from negligent acts or omissions of Caterer, and to reimburse Caterer for any expenses or loss, including reasonable attorneys fees and expenses, incurred by reason of any such claim being made against Caterer. Patron assumes the responsibility of so notifying all its employees, guests, visitors and invitees.”
It appears that one of the third-party defendant’s guest met with an accident at the affair and brought an action against the third-party plaintiff who then proceeded to implead the third-party defendant pursuant to the afore-mentioned “ Rule ” 25.
At this point it should be interjected that clauses such as “ Rule ” 25 had come to the attention of the New York State Legislature. In 1966 the New York Legislature enacted chapter 586 of the Laws of 1966 commonly referred to as section 5-322 *563 of the General Obligations Law which became effective June 14, 1966, approximately one and one-half months prior to the agreement herein. This statute provides: “ § 5-322. Agreements exempting caterers and catering establishments from liability for negligence void and unenforceable. Every covenant, agreement or understanding in or in connection with or collateral to any contract entered into with any caterer or catering establishment exempting the said caterer or catering establishment from liability for damages caused by or resulting from the negligence of the caterer or catering establishment, his agents, servants, employees or patrons at the affair contracted therefor, shall be deemed to be void as against public policy and wholly unenforceable.” (Added by L. 1966, ch. 586, eff. June 14, 1966.)
The third-party defendant contends that the aforesaid statute makes “ Rule ” 25 void as against public policy and unenforceable and further argues that this clause is unconscionable. The third-party plaintiff contends that the aforesaid statute outlaws agreements exempting caterer from liability whereas the cause of action herein is based on an agreement to indemnify. This distinction is in essence the crux of the third-party plaintiff’s position. In addition, he urges that this clause is not unconscionable. This court, therefore, must first determine whether the distinction urged by the third-party plaintiff has a valid basis or if section 5-322 of the General Obligations Law declares a clause such as ‘ ‘ Rule ’ ’ 25 void as against public policy and unenforceable. For this, it becomes necessary to look to this section in its entirety and to the legislative intent.
The aforesaid section of the General Obligations Law was introduced by then Assemblyman and now Judge Noah Gold-stein. His memorandum regarding the bill as recorded in the New York State Legislative Annual specifically refers to certain catering establishments having a clause in their contracts known as the “ Indemnification Clause ” or a “ Save Harmless Clause ’ ’ exempting them from any liability regardless of the negligence of the caterer, its agents, servants or employees. (N. Y. Legis. Annual, 1966, p. 32.) This court notes that the language ‘ ‘ Indemnification Clause ’ ’ and É ‘ exempting ’ ’ them from any liability is used interchangeably. It is also noteworthy that the memorandum throughout refers to a clause such as “Rule” 25 as an indemnification clause and, therefore, when the Legislature passed section 5-322 of the General Obligations Law, the exemption which third-party plaintiff contends was exculpatory was used synonymously with indemnification and there can be no question that it was the legislative intent to *564 render a clause such as “ Bule ” 25 herein void as against public policy and unenforceable.
To attempt to deal with semantics and word definitions, to overcome the true legislative intent can be of no avail here to the third-party plaintiff. Whether the clause is exculpatory or, as they prefer to state, one of indemnification is of little matter when considered in the light of legislative intent. We must look to the substance and not the form to determine whether this clause is against public policy.
Where a contract is directly violative, or has as its object the violation of a statute enacted for the protection of the public, it must be held illegal.
The contention by third-party plaintiff that the case of Horowitz v. B and S Caterers (19 A D 2d 650) is directly in point with the case herein cannot be entertained. That case was decided prior to the enactment of section 5-322 of the General Obligations Law. It appears that the instant case is one of first impression since the said enactment.
One of the major considerations of the Legislature in enacting this statute, as indicated by the afore-mentioned memorandum, was the fact that persons hiring a catering establishment appear without attorney and are primarily interested in the basic aspects of the contract, i.e., price to be paid and services to be rendered. The need for the statute herein is confirmed and further pointed up by the form of the contract herein. All of the basic aspects as well as all signatures are contained in the front thereof and the ‘ ‘ Buies and Conditions ’ ’ are on the reverse side, in small print, with a one-line reference thereto on the front. In addition, the “ Bule ” in question, which would make the host an insurer for the caterer’s negligence, is somewhere below the middle of the reverse side which contains myriad “ Bules and Conditions,” almost all of which impose additional responsibilities on the host only.
The motion to dismiss the third-party complaint is granted.