William T. Co win, J.
An application was made by the fourth-party defendant, Jack Karsh (Karsh) pursuant to CPLB 3211 (subd. [a], par. 7) to dismiss the fourth-party complaint of Levenstein Caterers, Inc. (Caterer) upon the ground that the cause of action is “ illegal, unenforceable and null and void.” Upon considering the motion this court in the exercise of its discretion determined to treat it as one for summary judgment under 3211 (subd. [c]). To “prevent surprise” Karsh was directed to interpose an answer and the parties were then to submit any “ additional papers ” as they desired. Disposition of the motion was ‘1 held in abeyance pending receipt of such additional proof.” (Lustig v. Congregation B’Nai Israel, 62 Misc 2d 216).
Karsh interposed an answer containing affirmative defenses. Those with which this court is concerned, allege that an indemnification provision in the Caterer’s contract is unconscionable, illegal and unenforceable. Neither of the parties has submitted any “ additional proof.” Each relies on the memoranda of law furnished to the court to sustain his or its opposing position.
The conceded facts for the purpose of this motion are that the contract between the parties was entered into on February 7, 1966 and provided for the catering of the Bar Mitzvah affair of Karsh’s son, which was to be held on May 21, 1967 at the premises of defendant, Congregation B’Nai Israel of Midwood (Congregation) ; that plaintiff, one of Karsh’s invited guests, fell in the reception hall of the Congregation’s premises as a result of the floor being “ slippery, over-waxed [and] had a foreign substance over ” it, and that with respect to plaintiff’s mishap, “ Condition ” “ 25 ” on the reverse side of the contract asserts a claim over against Karsh. It reads as follows:1 ‘ Patron agrees to indemnify and save harmless Caterer and its servants and agents from any and all claims, liabilities, loss, demands or actions whatsoever for any personal injuries, death or property damages to any persons attending the affair hereby contracted for due to any reason or cause whatsoever, even though arising from negligent acts or omissions of Caterer, and to reimburse Caterer for any expenses or loss, including reasonable attorney’s fees and expenses, incurred by reason of any such claim being *1054 made against Caterer. Patron assumes the responsibility of so notifying all its employees, guests, visitors and invitees.”
Caterer contends that as a matter of law said provision must be deemed as one of indemnity 11 not offensive to public policy under common law” or “ under General Obligations Law, Sections 5-322 ” (enacted and effective June 14,1966).'
The issue presented here is whether “ Condition ” “ 25 ” was unconscionable and violated public policy. The postulate advanced by Caterer is that, once this clause had been judicially determined to be a valid indemnification undertaking (Horowitz v. B & S Caterers, 19 A D 2d 650 [2d Dept.] decided June, 1963), it became the established public policy of the State immutable to change except by legislative enactment, and then such change may only affect those contracts thereafter consummated.
The fallacy of such a postulate is that it is anchored in the quicksand of rapidly changing times and sophisticated commercial progress. “ The rule of freedom of contract, which reflected the public policy of the State in the days of the canal boat and stage coach, has ceased to be applicable under modern conditions.” (Straus & Co. v. Canadian Pacific Ry. Co., 254 N. Y. 407, 412). Public policy “ is not static and the field of application is an ever increasing one. A contract, or a particular provision therein, valid in one area may be wholly opposed to the public policy of another.” (Henningsen v. Bloomfield Motors, 32 N. J. 358, 403).
Our Court of Appeals has not hesitated to change the rules of law to conform with current thinking, values and mores, all without benefit of legislative enactment. Though the Legislature failed to act, the court, nevertheless, changed the rules as to the running of the Statute of Limitations in malpractice actions when a foreign object is left in the patient’s body (Flanagan v. Mt. Eden Gen. Hosp., 24 N Y 2d 427, 431). It permitted intrafamily tort actions by “ abolishing the defense of intrafamily tort immunity for nonwillful torts ” and ordered that it “be applied retrospectively to matters which have not gone to final judgment.” (Gelbman v. Gelbman, 23 N Y 2d 434, 439). It further gave to a wife the right to recover for loss of consortium, noting that ‘ ‘c the common law of this State is not an anachronism, but is a living law which responds to the surging reality of changed conditions ’ ”. (Millington v. Southeastern Elevator Co., 22 N Y 2d 498, 509; see, also, Gallagher v. St. Raymond’s R. C. Church, 21 N Y 2d 554).
Chancellor Kent, long ago declared that “ ‘ cases ought to be examined without fear, and revised without reluctance, rather *1055 than have the character of our law impaired ’ ”, (Rumsey v. New York & New England R. R. Co., 133 N. Y. 79, 86; see, also, Justice Stone’s article on “ The Common Law in the United States ” 50 Harv. L. Rev. 4 [1936]).
In consonance with the philosophy expounded by Chancellor Kent this court will re-examine Horowitz v. B & S Caterers (19 A D 2d 650, supra) and its record on appeal. The contract of B & S Caterers had captioned on the reverse side thereof, “ Standard Catering Contract Approved by Brooklyn Caterers Assn. Inc. — Bules and Conditions ”. There then appear 29 “ Bules and Conditions ” including clause “ 24 ” which is identical with ‘ ‘ Condition ” ‘ ‘ 25 ” in the instant case, even to the punctuation. The lower court (35 Misc 2d 283, 285) held that the indemnification clause “ should not be permitted to cloak the defendant with complete immunity ” and u Accordingly, it cannot be maintained that the parties intended indemnification for acts of negligence in the management, care, and control of the buildings * * *. Such intent is not clearly expressed as is required.” The Appellate Division, our Department reversed, and after noting that plaintiff’s guest at the Bar Mitzvah party given by the third-party defendant at the premises controlled by the third-party plaintiff, slipped and fell “ on a highly polished waxed floor upon which there was an accumulation of wax”, stated in its memorandum opinion “ under all the circumstances presented by this record, triable issues of fact exist.”
The record on appeal discloses that the motion by the third-party defendant was for summary judgment dismissing the third-party complaint and was made on affidavits by the third-party defendant and his attorney wherein they denied the execution of any “ agreement containing an exculpatory clause ”, denied that the photostatic copy of the alleged contract furnished by Caterer was signed by the third-party defendant, and affirmatively stated that if any such contract had been signed, the exculpatory clause was ‘ ‘ too vague and indefinite to be valid and binding and are against public policy. The contract must be sufficiently clear and unequivocal.” (Record, p. 33).
The briefs on appeal dealt only with the contract as allegedly performed and presumably executed and whether the indemnification undertaking was sufficiently clear to hold the third-party defendant liable for the Caterer’s own negligence. No attack was made or considered as to the unconscionability of the clause. The Appellate Division was called upon merely to determine whether the claimed contract had been executed and whether the clause sufficiently stated an indemnification undertaking against Caterer’s own negligence. From the examination of the record *1056 on appeal, this court holds that the Appellate Division did not pass on the unconscionability of the contract or whether it was against public policy.
The basic purpose of the Caterer’s contract is to service the celebration of a Bar Mitzvah, a memorable event in the life of the fourth-party defendant’s son. The affair was to be at the premises controlled by the Caterer and to be visited by the fourth-party defendant and his guests on the scheduled hour. In the instant case the basic service being furnished is that-of catering an affair. The total price of $1,480 is itemized on the front of the contract and relates only to cost of food, flowers, service employees and the like. No mention whatever is made of insurance or indemnity costs.
The fourth-party defendant is not given an opportunity in the itemized charges to pay any additional charge for liability insurance. The Caterer carries liability insurance and would not wish to convey to the patron that it has obtained a reduced premium by the inclusion of “ Condition ” “ 25 ” in the standard contract and therefore did not include an item for one-day coverage, which at best would be nominal. The obvious reason is to entrap the unsuspecting patron.
Let us assume, without creating any inference of disparagement, that hospitals included such a clause in their admission records that must be signed by the patient or his representative, and that a visitor in the room of the patient fell on a negligently kept wet and slippery floor, or the undertakers included such a clause in their contract with the bereaved, and a relative or a friend attending the funeral services at the chapel fell on a defectively maintained floor, or the driver of the hearse of the limousine in the procession is involved in an accident, would this court hesitate to strike down such a clause as unconscionable? Would a legislative declaration be necessary?
A question of great significance is whether this standard type of catering contract deprives the patron of his right to bargain freely.
In Henningsen v. Bloomfield Motors (32 N. J. 358, 389-390, supra) the court in affirming judgment for the plaintiff stated: “ The traditional contract is the result of free bargaining of parties who are brought together by the play of the market, and who meet each other on a footing of proximate economic equality. In such a society there is no danger that freedom of contract will be a threat to the social order as a whole. But in present-day commercial life the standardised mass contract has appeared. It is used primarily by enterprises with strong *1057 bargaining power and position. ‘ The weaker party, in need of the goods or services, is frequently not in a position to shop around for better terms, either because the author of the standard contract has a monopoly (natural or artificial) or because all competitors use the same clauses’ * * * Such standardized contracts have been described as those in which one predominant party will dictate its law to an undetermined multiple rather than to an individual. They are said to resemble a law rather than a meeting of the minds.” (Emphasis added.) The reasoning of the Henning sen case aptly applies to the facts in the instant case.
In Goodman v. Imperion Manor (62 Misc 2d 561, aifd. 64 Mise 2d 813) it appears that the caterer’s contract dated July 25, 1966 (subsequent to the enactment of section 5-322 of the General Obligations Law) is similar to the instant contract and also has on the reverse side 11 30 Rules and Conditions with ‘Rule’ 25 being directly involved.” (62 Misc 2d 561, 562.) ‘ ‘ Rule ” 25 is identical in number, wording and punctuation with “ Condition ” “ 25 ” in the instant contract. The clause and contract used clearly appear to be a “ standard contract ” employed by caterers. In dismissing the third-party complaint, the court held that the contract was illegal and against public policy.
The Legislature in enacting section 5-322 of the General Obligations Law (four months after the date of the Caterer’s contract but approximately one year before it was to be performed,) had before it the memorandum of Assemblyman and now Civil Court Judge Noah Goldstein (N. Y. Legis. Annual, 1966, p. 32) in which it was stated: “ One who contracts for an affair to be held at the caterers establishment, whether it be a wedding or any other social event, is interested solely in the charge per couple, the type of menu and other services to be performed by the caterer. An attorney is not present at the time the contract is entered into. Generally the individual does not read the entire contract excepting what the affair would cost, little realizing that there is an indemnification clause which provides that any guest of the host who is injured while attending the affair, regardless of the negligence of the caterer, his servants, agents or employees, can look for redress to the host and not the caterer. This bill * * * will make such clause in the contract void and unenforceable as against public policy. ’5
The significant portion of section 5-322 declares ‘ ‘ Every covenant * * * in connection with or collateral to any contract entered into with any caterer or catering establishment *1058 exempting the said caterer or catering establishment from liability for damages caused by or resulting from the negligence of the caterer or catering establishment * * * at the affair contracted therefor, shall be deemed to be void as against public policy and wholly unenforceable.” (Emphasis added.) The word ‘ ‘ exempt ’ ’ as used in the section has been construed to be synonymous with indemnify (see Goodman v. Imperion Manor, supra).
The Legislature clearly declared that a contract entered into containing the caterer’s clause is against public policy. The section is not to be read as an unconstitutional abrogation of existing contracts or of vital clauses therein but as a pronouncement of existing public policy with respect to such clauses. A declaratory act is entitled to consideration and weight in determining public policy (People ex rel. Westchester Fire Ins. Co. v. Davenport, 91 N. Y. 574). Any other interpretation would lead to the absurd result that a contract entered into the night before the enactment to be performed a year later is valid but a contract entered into the same day of the enactment to be performed the following month is tainted by the presence of that indemnification clause. ‘ ‘ A construction which would make a statute absurd, or lead to absurd results, should be avoided ”. (1 McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 145).
Caterer’s contention that section 5-322 of the General Obligations Law may not constitutionally be made to retroactively apply to this contract is without merit. Courts should be alert to the mischief prevailing and the evil sought to be suppressed. “ A person has no property, no vested interest, in any rule of the common law”. (Munn v. Illinois, 94 U. S. 113, 134). So long as the legislation is addressed to a legitimate end, ‘ ‘ it may not be stricken as unconstitutional, even though it may interfere with rights established by existing contracts.” *(Matter of Department of Bldgs, of City of N. Y., 14 N Y 2d 291, 297; see, also, Matter of Farrell v. Drew, 19 N Y 2d 486).
In Williams v. Walker-Thomas Furniture Co. (350 F. 2d 445, 448-449) the court, in referring to Congress’ enactment of the Uniform Commercial Code, stated: ‘ ‘ The enactment of this section, which occurred subsequent to the contracts here in suit, does not mean that the common law of the District of Columbia was otherwise at the time of the enactment, nor does it preclude the court from adopting a similar rule in the exercise of its powers to develop the common law for the District of Columbia. * * * Accordingly, we hold that where the element of unconscionability is present at the time a contract is made, the contract should not be enforced.” (Emphasis added.)
*1059 As stated in the City of El Paso v. Simmons (379 U. S. 497, 515): “ This Court’s decisions have never given a law which imposes unforeseen advantages or burdens on a contracting party constitutional immunity against change.” In the footnotes to its opinion, the court analyzed the decisions, commencing with Home Bldg, é Loan Assn. v. Blaisdell (290 IJ. S. 398), to demonstrate that the ‘‘ critical reliance on the distinction between obligation and remedy ’ ’ has been disregarded to protect the vital interest of the people (p. 506).
Under the facts of this case ‘ ‘ no antecedent contract will be permitted to stand in the way of the power of the State to promote the welfare of its citizens by protecting them against the encroachments of a rapacious individualism ’ ’ (Cardozo, Paradoxes of Legal Science, p. 131).
Motion of the fourth-party defendant to dismiss the complaint is granted.